Rogers, *et al.* Lessee, *vs.* Moore.—June, 1826.

The beginning of a tract of land called *C,* was described in the patent to be "at a bounded red oak, standing 19 perches to the S. of the main road, and *at the end of the first line of a tract of land called M"*—*Held,* that the call to begin the tract *C,* at the end of the first line of the tract *M,* was not an imperative one; and that the jury were not bound to find the tree called for to be at the end of that line, but might find it to be elsewhere, according to the proof.

Appeal from *Baltimore* County Court. Ejectment for a tract of land called *Orange.* Defence was taken on warrant, and plots were returned, by which it appeared that the defend-

ant took defence for *Carter's Delight.* Plea, *non cul.* and issue.

At the trial the plaintiff, (the appellant,) read in evidence the patent of *Orange,* granted the 31st of October 1751, to *Charles Carroll,* of *Annapolis,* and others, one of the courses of which is described as bounding on *Copus's Harbour,* and running thence reversely N. W. by N. 40 perches, until it intersects the given line of *Mounteney's Neck,* then reversing the given line, &c. The plaintiff then deduced a title in fee simple in said land, from the patentees, by sundry mesne conveyances, wills, and descents to the several persons, who on the 26th of January 1816, constituted and were called *The Baltimore Company.* He also read in evidence an act of the assembly of this state, passed the 26th of January 1816, entitled, "An act for the relief of *The Baltimore Company,*" (1815, *ch.* 147,) vesting in the lessors of the plaintiff all the lands which belonged to that Company, and had been sold by them, but not conveyed, and all lands that then remained unsold and undivided; in trust, &c. He also gave in evidence the plots and explanations in the cause, and proved that *Orange* was truly located by him on said plots, and that the part thereof laid down on said plots as his claim and pretensions, remained undivided and unsold by the *Baltimore Company* on the 16th of January 1816, and included the land for which the defendant took defence. The defendant then gave in evidence the patent of a tract called *Carter's Delight,* granted the 10th of December 1717, to *John Carter,* "beginning at a bounded red oak standing nineteen perches to the southward of the main road, and at the end of the first line of a tract of land called *Mountainess,* and running from the said tree north sixty perches, then," &c. containing 100 acres. And to prove that *Carter's Delight* was truly located by him on the plots, as his defence, beginning' at or near to the place designated by the letter red A, on the plots, he read in evidence the patent of a tract of land called *Fell's Prospect,* granted *Edward Fell* the 20th of May 1761, being a resurvey on several older tracts. And also gave in evidence, to support his said location, certain deeds executed by *The Baltimore Company,* for whose use this action was brought, of lots No. 40,

41, 78 & 79, being parts of *Orange*, the younger, to the different purchasers of the same at public auction in 1792. And for the same purpose gave in evidence a deed from *Thomas Sligh* to *John Bond*, for 10½ acres of land, being part of a tract called *Mounteney's Neck;* and proved that the locust post, mentioned in the said deed, stood at the place designated on the plots by a small black circle, near to red A. And he also gave in evidence, by consent of the plaintiff, the petition, commission and depositions, under a land commission, taken out by *William Carter* on the 4th of March 1735; and the petition, commission and depositions, under a land commission taken out by *William Fell*, in December 1742; and also gave in evidence, with the consent of the plaintiff, subject to all just exceptions to the competency and relevancy of the matters therein contained, the depositions of *Adam Clackner, James Baker, E. Smith, John Murray, James Baker, Pamelia Moore, Hugh Stewart, John Mycroft, John H. Barney, William Evans* and *Adam Clackner*, all taken in this cause. The plaintiff then, to prove that *Carter's Delight* was correctly located by him on the plots beginning at the black letter A, and that the defendant's location of that tract could not be sustained, read in evidence the certificate of *Mounteney's Neck*, surveyed for *Alexander Mounteney* on the 31st of March 1662; and also the patent of the said land, granted to the said *Mounteney* on the 30th of June 1663; and proved that *Mounteney's Neck* was truly located by him on the plots, beginning at black B, and terminating its first line at black A. And also gave in evidence, for the purpose aforesaid, the warrant of survey granted to *John Carter* on the 29th of July 1714, on which the survey of *Carter's Delight* was made; and also, the certificate of survey of the said tract made and returned under the said warrant, dated the 11th of August 1714, and the certificate returned on the 27th of April 1737, for *William Fell*, of *Mounteney's Neck*, as escheat, and the patent thereon granted to said *Fell*, on the 12th of July 1737. He also gave in evidence, for the same purpose, a deed from *William Carter* to *William Fell*, for *Carter's Delight*, dated the 28th of February 1740, and the depositions of *William Bond* and of *James Baker*, dated in August 1824, and the petition of

*William Carter,* above named, of the 4th of March 1735, for a commission on *Carter's Delight* aforesaid.   And also gave in evidence, that the white oak tree called for in the original certificate and patent of *Mounteney's Neck,* as the second boundary of that tract, and the red oak tree called for in the escheat certificate and patent of *Mounteney's Neck,* as the second boundary of the said escheat land, and the red oak called for in the certificate and patent of *Carter's Delight* as its beginning, have all long since disappeared, and been wholly lost.   The plaintiff then proved by *Jehu Boulden* and *Ephraim Smith,* witnesses in the cause, that the beginning and termination of the first line of *Mounteney's Neck* was as the plaintiff located the same on the plots; and read in evidence the certificate and patent of the tract of land called *Copus's Harbour,* or *Corpus Harbour,* and the certificate and patent of *Carter's Delight;* also the aforesaid deed from *William Carter* to *William Fell;* and the aforesaid deed from *Sligh* to *Bond,* together with the plots in the cause, to prove that *Mounteney's Neck* was called sometimes by that name, at other times by the name or description of a parcel of land laid out for *Alexander Mounteney,* at other times *Mountainess,* and also as land originally granted to *Alexander Mounteney,* and to prove that the land, so differently called, was one and the same tract of land. He then proved, that *Edward Fell,* patentee of *Fell's Prospect,* was the son and heir at law of *William Fell,* mentioned in the escheat certificate and patent of *Mounteney's Neck* aforesaid, and in the said deed from *William Carter* to *William Fell.*   The defendant then prayed the court to direct the jury, that if the jury found from the evidence that the red oak called for in the patent of *Carter's Delight,* as the beginning of the said tract of land, stood at the point designated on the plots as red A, then *Carter's Delight* must be located from that point, according to the courses, distances and calls, contained in the grant, with such allowance for variation of the compass as the jury, upon the evidence, might think right to allow, and that the jury were not bound to begin the said tract at the end of the first line of *Mounteney's Neck.*   The plaintiff objected to the directions so prayed by the defendant, and to the relevancy of the testimony so given by him, and prayed the

court for the following instructions to the jury: *First.* That there is no evidence in this cause of the existence at any time of a red oak at or near to either of the places represented by the red letters A or B, on the plots. *Second.* That as the certificate and patent of *Mounteney's Neck,* called for a white oak at the end of its first line, it follows that the call in *Carter's Delight* to begin at a red oak standing at the end of that line, where no red oak could have stood, is a mistake so far as relates to the tree, which must be corrected by rejecting that part of the call. *Third.* That as the certificate and patent of *Carter's Delight* call for a red oak at the end of the first line of *Mounteney's Neck,* no evidence can be received to show the existence of such a beginning tree at the place designated by the red letters A or B, on the plot, at the distance of two hundred and sixty perches from the end of that line. *Fourth.* That the true location of *Carter's Delight* is to begin its first line at the end of the first line of *Mounteney's Neck,* wherever the jury may find it to be, and to run course and distance for all its subsequent lines, with such allowance for variation as they may find to be correct. But the Court, [*Archer,* Ch. J.] admitted the evidence so offered by the defendant, and gave the directions prayed by him, and refused to give those prayed by the plaintiff. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before Buchanan, Ch. J. and Earle, Stephen, and Dorsey, J.

*Magruder,* for the Appellant, referred to *Helms's Lessee vs. Howard,* 2 *Harr. & McHen.* 84, per *Harrison* Ch. J. & *Carroll, et al. Lessee vs. Norwood,* 5 *Harr. & Johns.* 163.

*Taney* and *Rogers,* for the Appellee, cited *Hammond vs. Ridgely's Lessee,* 5 *Harr. & Johns.* 245; and *Pennington vs. Bordley's Lessee,* 4 *Harr. & Johns.* 450.

Stephen, J. delivered the opinion of the court. The sole question in this case is as to the beginning of the tract of land called *Carter's Delight,* which is stated in the patent to begin "at a bounded red oak, standing nineteen perches to the south of the main road, and at the end of the first line of a tract of

land called *Mountainess,*" which tract is sometimes called *Mounteney's Neck.* The appellant contends that the call is an imperative one, and that *Carter's Delight* must begin at the end of that line, and that the jury are not at liberty to find from the evidence, the true beginning of that tract at any other place, although they should find the tree called for not to stand at the end of the first line of the tract of land called *Mountainess,* as expressed in the patent. The question here presented for the consideration of the court is not now open for discussion, but has long since been put to rest by several solemn adjudications of this tribunal. In the case of *Carroll, et al. Lessee vs. Norwood,* 5 *Harr. & Johns.* 155, after affirming the right and jurisdiction of the court to decide on the construction of grants and deeds, the court go on and declare it to be the exclusive right and province of the jury to ascertain and fix calls according to the evidence legally admissible for that purpose. So in the case of *Rench vs. Beltzhoover,* 3 *Harr. & Johns.* 469, the court express themselves in the following terms: "The court are of opinion, that it exclusively belongs to the power and jurisdiction of the court to determine on the true construction and operation of grants, and whether a call in a certificate of survey is to be gratified or not, and in what manner; and that it exclusively appertains to the province of the jury to find facts, and ascertain the true place or point called for, according to evidence legally admissible by the court." There are other decisions of this court establishing the same principles, particularly the case of *Pennington vs. Bordley, et al. Lessee,* 4 *Harr. & Johns.* 450 So that the relative power and jurisdiction of the court and the jury upon this subject may now be considered as solemnly settled.

The court are therefore of opinion, that the jury were not bound to find the tree called for at the end of the first line of the tract of land called *Mountainess.*

JUDGMENT AFFIRMED.