# THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* STATE, USE OF MARY J. CHAMBERS AND IRVING CHAMBERS, BY NEXT FRIEND.

*Negligence—Passenger Crossing Track at Railroad Station—Running
Train Through Station—Who are Passengers—Res Gestae—Rules
of the Company—Intoxication of Deceased—Evidence—Right of
Wife Separated from Husband to Recover Damages.*

A judgment will not be reversed on account of the refusal of the trial
Court to strike out testimony improperly admitted, when the same
facts have been proved by competent evidence.

Declarations of a party, made just before he boarded the defendant's
train, and the occurrence of the accident by which he was killed,
touching his purpose in going on the train, are admissible as part of
the *res gestae.*

In order to become a passenger and entitled to protection as such at
the hands of the carrier, it is not necessary that a person shall have
paid his fare or entered a train, but he is such as soon as he comes
within the control of the carrier at the station, through the usual
approaches, with intent to become a passenger by paying fare, either
before or after entering the train.

Intoxication on the part of the injured person is not proof of negligence
*per se.*

The fact that a man killed by the negligence of the defendant had been
separated from his family for twelve years preceding his death and
had contributed nothing to the support of the plaintiffs, does not pre-
vent a recovery by them ; the marital relation and the rights and
duties growing thereout continued to exist.

There were two stations of the defendant company in the town of B.,
known as the West and East station.   The deceased, after declaring
to friends his intention to go to Washington, boarded, at midday, a

local train of the defendant, by jumping on the platform of a car next to the tender of the engine, at the West station and was carried half a mile to the East station, whence a train started for Washington. Upon arriving there he went on a platform across the tracks towards the ticket office, and while so attempting to cross, a passenger train passing through the station at a rate of speed variously estimated as from 17 to 35 miles an hour, struck and killed the deceased. Other passengers were crossing the track at the same time, and the deceased did not look out for approaching trains before attempting to cross. There was conflict of evidence as to whether a bell was rung and whistle blown by the train that struck the deceased. There was testimony showing that the deceased was somewhat under the influence of liquor at the time he boarded the train at the West station. In an action by the widow and infant child to recover damages, *Held,*

1st. That it was immaterial how the deceased got from the West station to the East station, if when at the latter station he was rightfulfy on defendant's premises and traversed the way usually taken by passengers to the ticket office.

2nd. That there was evidence from which the jury could find that when he crossed the tracks he was in quest of a ticket to Washington, and under the circumstances of the case he was not bound to stop, look and listen before crossing.

3rd. That an instruction to the jury that if the deceased was slightly intoxicated when he got aboard the first train, but was not drunk at the time of the accident, then the jury cannot infer that he was guilty of want of ordinary care is correct.

4th. That it was negligence on the part of the defendant to run a train through the station at a high rate of speed while another train was standing there discharging passengers, under the circumstances of this case.

5th. That a rule of the defendant company to the effect that "when one passenger train is standing at a station receiving or discharging passengers on double track, no other train will attempt to run past until the passenger train at the station has moved on, or signal given by the conductor of the standing train," is admissible in evidence.

6th. That the time tables of the defendant company were also admissible in evidence.

7th. That testimony as to whether the deceased saved anything out of his earnings is not admissible.

Appeal from the Circuit Court for Frederick County. This action was brought in the name of the State to recover damages for the killing of John W. Chambers at the East Brunswick station of defendant's road, on April 21, 1894,

through the alleged negligence of defendant's servants' The evidence showed that Chambers, being near the West Brunswick station, and desiring to go to Washington, enquired when the next train would leave by which he could go. At that moment a train, which connected for Washington, was about leaving the West station, and would pass by where Chambers stood. As it approached he got aboard the first platform of the baggage car and rode thereon to the East station, a distance of half a mile. When the train stopped he got off on a long platform between the tracks, and started across the north track by a connecting platform over that track, going toward the ticket office. Other passengers were crossing over at the same time; also several of defendant's employees. There is a double track in front of this station used by passenger trains, and it was as Chambers was about to cross the intervening track between the station and the train from which he had alighted—No. 16— that train No. 5, an express train, running westerly in the opposite direction, came by and struck and killed him. There was conflict of testimony as to the speed of the express train at the time—plaintiffs' witnesses putting it at from 30 to 35 miles an hour, and defendant's witnesses at from 15 to 17 miles an hour. There was also some conflict as to the ringing of the bell and blowing of the whistle of No. 5; some of the plaintiffs' witnesses testify that they did not hear either, and that their attention was first called to the approaching train by some one exclaiming, " Here comes No. 5!" while the testimony of the appellant's witnesses is very positive that the whistle was blown and the bell rung.

At the trial the plaintiff offered the following prayers:

*Plaintiffs' 1st Prayer.*—If the jury find that John W. Chambers on &c., got aboard the train called accommodation train, known as No. 16, over defendant's road, in the manner testified to by William C. Compton, and rode thereon to the East Brunswick station, a distance of about one-half mile, on the platform of the baggage car, if they shall so find, and that said train, then on the south track of defend-

ant's road, stopped at said station for the purpose of receiving and discharging passengers, and that when said train reached said East Brunswick station, John W. Chambers left his position on the accommodation train to obtain a ticket to Washington by said train, and that he got off on the side next to the station, upon a long platform between the north and south tracks of said road, as shown in the photograph in evidence, and that he walked towards the ticket office at said station, to reach which it was necessary for him to cross the north track of defendant's road, and that in so walking on the platform and in attempting to cross said north track to get to said ticket office, if the jury so find, he was killed by the locomotive of an express train of defendant while operated by its agents over its roads, and that the equitable plaintiffs are related to him in the manner set forth in the pleadings herein, and that said killing resulted directly from the want of the exercise of ordinary care and prudence on the part of the agents of defendant, and not from the want of ordinary care and prudence of deceased, directly contributing to the accident, then the plaintiffs are entitled to a verdict.   (Granted.)

*Plaintiffs' 4th Prayer.*—If the jury find from the evidence that John W. Chambers, on or about April 21st, 1894, got aboard the train called the accommodation train, known as No. 16, over defendant's road, in the manner testified to by the witness, William C. Comption, and rode therein to the East Brunswick station, a distance of about one-half mile, on the platform of the baggage car, if the jury shall so find, and that said train then on the south track of defendant's road stopped at said station for the purpose of receiving and discharging passengers at that station, and when said train reached said East Brunswick station, John W. Chambers left his position on the accommodation train to obtain a ticket to Washington by said train, and that he got off on the side next to the station on a long platform between the north and south tracks of said road, as shown in the photograph in evidence, and that he walked toward the ticket

office at said station, to reach which it was necessary for him to cross the north track of defendant's road, and that in so attempting to cross over said north track to get to said ticket office he was killed by the locomotive of an express train of defendant, while operated by its agents over its road, and that the equitable plaintiffs are related to him in the manner set forth in the pleadings herein, that then the verdict of the jury must be for the plaintiffs, unless the jury shall find that said John W. Chambers actually saw said train No. 5 approaching, or heard the cries warning him of its approach, and understood the same in sufficient time to avoid being struck by the engine of said express train, if the jury shall find that he was so struck, and in this connection the jury are to consider the general and known disposition of men to take care of themselves and to keep out of the way of difficulty and danger. (Granted.)

*Plaintiffs' 5th Prayer.*—That if the jury shall find from the evidence that John W. Chambers had used intoxicating drink on the morning of April 21st, 1894, as testified to by the witness, William C. Compton, and that he was slightly intoxicated when he got aboard of train No. 16, as testified to by defendant's witness, L. V. Dean, but if they shall further find that deceased was not drunk when he was about to cross the defendant's track at East Brunswick, as men-. tioned in the 1st prayer of plaintiffs, such use of intoxicating drink and such slight intoxication is not evidence from which a jury may infer the want of ordinary care and prudence on his part. (Granted.)

*Plaintiffs' 6th Prayer.*—That if the jury shall find for the plaintiffs, then, in assessing the damages, they are to estimate the reasonable probability of the life of the deceased, Chambers, and give his widow and child, Irving C. Chambers, of the equitable plaintiffs, such pecuniary damages, not only for past losses, but for such prospective damages as the jury may find that they have suffered or will suffer as a direct consequence of the death of said Chambers. (Granted.)

*Plaintiffs' 7th Prayer.*—That if the jury shall believe from all the evidence that the defendant company erected and maintained at East Brunswick the platform shown in the photograph offered in evidence and the same, and walking across the north track of defendant were the only passageways provided for persons who had to go to and from said station and ticket office and said large platform between the tracks ; and shall further find that defendant was in the habit of stopping its eastbound passenger accommodation train on its south track at said platform between the tracks, to allow passengers to embark and disembark at East Brunswick, by passing over said north track and said connecting small platform ; and shall further find that deceased, Chambers, arrived at said platform, between the tracks, on train No. 16 of defendant ; that said train stopped ; that deceased thereupon got upon said platform between the tracks and started to go across said north track to defendant's ticket office to buy a ticket to Washington City by said train ; that just as deceased stepped on said north track he was struck by an engine of defendant, drawing its train No. 5, over said north track, and killed while said train No. 16 was still standing at said station, embarking and disembarking passengers ; if the jury shall so find, and shall believe that the equitable plaintiffs, Mary J. Chambers and Irving C. Chambers, were related to decedent, as mentioned in evidence, that then the verdict of the jury must be for the plaintiffs, unless the jury shall find that decedent actually saw said train No. 5 approaching, or heard cries warning him of its approach and understood the same in sufficient time to avoid being struck by the engine of No. 5 ; if the jury shall find he was so struck, and in this connection the jury are at liberty to consider the general and known disposition of men to take care of themselves and to keep out of the way of difficulty and danger.   (Granted.)

*Plaintiffs' 8th Prayer.*—That if the jury shall believe from the evidence that the defendant company erected and maintained, at East Brunswick station, the platform shown in pho-

tograph offered in evidence, and that the same and walking across the north track of defendant were the only passage ways provided for persons who had to go to and from said station house and ticket office platform and said large platform between the tracks on business with said defendant company, and shall further find that defendant was in the habit of stopping its eastbound accommodation passenger trains at said platform, between the tracks, to allow passengers to embark and disembark by passing over said north track and said connecting platform, that then said deceased, Chambers, had a right to consider that any person needing to pass to and from said station and ticket office platform and said platform between the tracks upon business with defendant were invited to use said platforms and passage ways, and that said passage ways and platforms would be kept free from danger of trains passing over its north track while a passenger train was standing on its south track embarking and discharging passengers.   (Granted.)

*Plaintiffs' 9th Prayer.*—That under all the circumstances mentioned in evidence, it was gross negligence of the defendant to run its train No. 5 over the north track of its road while its accommodation train No. 16 was standing at East Brunswick station embarking and discharging passengers; if the jury shall find that train No. 5 was so run, and that negligence is not properly imputable to the deceased for failing to look out for the danger of said train No. 5 passing at said point, since deceased had the right to consider that said train could not be so run while said train No. 16 was standing at said platform receiving and discharging passengers.   (Granted.)

*Plaintiffs' 10th Prayer.*—That if the jury shall find the facts set out in the 1st prayer that it is entirely immaterial whether decedent got upon defendant's train No. 16 while in motion, or where he placed himself on same, or whether he was or not known by defendant's employees in charge of No. 16 to be on said train at and prior to its arrival at East Brunswick.   (Granted.)

And the defendant, by its counsel, offered the following prayers:

*Defendant's 1st Prayer.*—That from the undisputed facts in this case, the said John W. Chambers, at the time that he was struck and injured by the defendant's train, and from which injury he subsequently died, was not a passenger of the defendant company; that no contractual relation at said time existed between the said John W. Chambers and the defendant; and that the said John W. Chambers, not being a passenger, as aforesaid, was not entitled to that degree of care on the part of the defendant imposed by law upon it as a carrier of passengers; and if the jury shall find that the said Chambers started to cross the north track of defendant's road without looking down the track in an easterly direction, from which direction train No. 5 was approaching; and shall further believe from the evidence, that the view of the track in said easterly direction was unobstructed for about half a mile (as testified to by the witnesses;) and that if the said Chambers had looked he could have seen said train approaching in time to avoid injury; and that in walking on said north track or in attempting to cross the same in front of said approaching train, the said Chambers was struck by the engine of said train and severely injured, and from which injury he shortly afterwards died, then that the said Chambers was guilty of contributory negligence, which negligence was the direct cause of the injury complained of, and the plaintiffs are not entitled to recover damages in this action, and the verdict of the jury must be for the defendant; unless the jury shall further find, that the defendant, after discovering the said Chambers in a·dangerous position, could have, by the use of ordinary care and diligence, avoided said accident, of which there is no evidence.   (Rejected.)

*Defendant's 2nd Prayer.*—That if the jury shall believe from the evidence that the said John W. Chambers got upon the defendant's train, No. 16, between the tender of the engine and the baggage car of said train, at a point east

of the defendant's old station at Brunswick, while said train
was in motion, without procuring a ticket, and without the
knowledge or consent of the agents of the defendant in
charge of said train, and in this position rode to the defen-
dant's station at East Brunswick, and that upon the arrival
there of said train No. 16, or shortly afterwards, the said
Chambers got down off the platform of the car upon which
he had been riding (next to the tender of the engine), upon
the station platform at East Brunswick, and started across
the north track of the defendant's road at that point with-
out looking down the track in an easterly direction, from
which direction the express train No. 5 was approaching;
and shall further believe from the evidence, that the view in
said easterly direction was unobstructed for the distance of
about half a mile (as testified to by the witnesses;) and that
if the said Chambers had looked he could have seen said
train approaching in time to avoid injury; and that in at-
tempting to cross the north track in front of said approach-
ing train, the said John W. Chambers was struck by said
train and severely injured, and from which injury he shortly
afterwards died, then that the said Chambers was guilty ot
contributory negligence, which negligence was the direct
cause of the injury complained of, and the plaintiffs are not
entitled to recover damages in this action, and the verdict
of the jury must be for the defendant, unless the jury shall
further find that the defendant, after discovering the said
Chambers in a dangerous position, could have, by the use
of ordinary care and diligence, avoided said accident, of
which there is no evidence.   (Rejected.)

*Defendant's 6th Prayer.*—That if from the evidence the
jury believe that the deceased had been separated from his
family for a period of about twelve years immediately pre-
ceding his death, and that he had contributed nothing to
the support of his wife or infant child during that period
(as testified to by the witnesses), that then there is no evi-
dence in this cause legally sufficient to entitle said equitable
plaintiffs to more than nominal damages.   (Rejected.)

*Defendant's 8th Prayer.*—That the jury cannot impute negligence to the defendant company, from the fact that the passenger train No. 16, the train going East, and upon which the said Chambers had been riding, was behind the schedule time, and late in arriving at the East Brunswick station, if the jury shall so find.   (Granted.)

*Defendant's 9th Prayer.*—That if from the evidence the jury believe that the said decedent, John W. Chambers, had been separated from his wife for a period of about twelve years, immediately preceding his death, and that during that time he had contributed nothing to her support, as testified to by the witnesses, that then there is no evidence in this cause legally sufficient to entitle the equitable plaintiff, Mary J. Chambers, wife of said decedent, to more than nominal damages.   (Rejected.)

*Defendant's 10th Prayer.*—The defendant, by its counsel, prays the Court, under all the pleadings and evidence, to instruct the jury that there is no sufficient legal evidence in this case from which the jury can find for the equitable plaintiffs in this cause, and the verdict of the jury must be for the defendant.   (Rejected.)

*Defendant's 12th Prayer.*—That every person of ordinary intelligence is bound to know that a railroad track is a place of more than ordinary danger, and it becomes his legal duty, when being on or about a railroad track, to use corresponding care and caution to avoid injury, and if the jury believe from all the evidence in this case that the plaintiffs' decedent, Jno. W. Chambers, at the time he went to or upon the defendant's track and received the injury which caused his death, did not look or listen for approaching trains, and that if he had so looked or listened he could have seen or heard the approaching train which struck and injured him, and avoided the same, that then said Chambers was guilty of negligence in not so looking or listening for approaching trains, and directly contributed to the injury which caused his death, and the equitable plaintiffs are not entitled to recover in this case, unless the jury shall further find from

the evidence that the defendant's agents, after said Chambers got in a place of danger, could have prevented such injury and did not do so.    (Rejected.)

The Court below (LYNCH, J.), granted the plaintiffs' 1st, 4th, 5th, 6th, 7th, 8th, 9th and 10th prayers, and rejected the defendant's 1st, 2nd, 6th, 9th, 10th and 12th prayers.    The defendant excepted to the action of the Court, and especially to the granting of the 1st, 3rd, 4th, 5th, and 7th prayers of the plaintiffs, upon the ground of the insufficiency of the evidence to sustain them.

The jury returned a verdict for the plaintiffs, assessing their damages at $2,500, and from the judgment thereon the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*W. Irvine Cross* and *Geo. Dobbin Penniman* (with whom were *John K. Cowen* and *John S. Newman* on the brief), for the appellant.

*William P. Maulsby, Jr.*, and *Glenn H. Worthington*, for the appellees.

ROBERTS, J., delivered the opinion of the Court.

This action was brought in the Circuit Court for Frederick County, in the name of the State, as plaintiff, for the use of the widow and children of John W. Chambers, who was killed by what is alleged to have been the wrongful act, neglect or default of the defendant corporation.    There was a verdict for the plaintiff and judgment thereon, from which the defendant has appealed.    The accident happened at a station on the main line of the defendant's road in Frederick County, known as East ·Brunswick.    There are in the town of Brunswick two stations on said road; one is known as East Brunswick, and the other as West Brunswick.    At about the hour of noon, on the 21st day of April, 1894, the deceased, John W. Chambers, being at the

West Brunswick station, remarked, that having been disappointed in seeing a party, he would go to Washington, D. C., and shortly thereafter boarded a local passenger train, No. 16, which carried him to the East Brunswick station, where he could obtain a ticket to Washington on an express train. As train No. 16 reached the West station, he jumped on it between the tender of the engine and the first car. It is contended that he was, at the time he got on the train, somewhat under the influence of drink. He rode to the East station on the platform of the postal car, which was coupled to the tender of the engine. When he reached the East station he got off on a platform between the railroad tracks, and started in the direction of the depot. Other passengers were crossing at the same time, as well as some of the employees of the defendant. There is a double track in front of the station used by passenger trains, and as the deceased was about to cross the intervening track between the station and the train from which he had alighted, an express train running westerly came by and struck and killed him. There is conflict of testimony, both as to the speed at which the train was running, and as to ringing of the bell and the blowing of the whistle.

The first exception found in the record of this appeal arises upon the refusal of the Court below to strike out the testimony of Mrs. Chambers, the widow, as to the earnings of her husband; she having testified that she had not seen or held any communication with him, for a period of from two to three years prior to his death. We do not think, however, that the admission of this testimony furnishes any ground for reversal, as the objection to it was not timely, and the testimony of Lizzie Sykes and of S. B. Barr, both of whom testified to the same effect, was admitted without objection. *Hayes* v. *Wells*, 34 Md. 512; *Leffler* v. *Allard*, 18 Md. 545; *Cole* v. *Harrington*, 7 H. & J. 146. The second and third exceptions relate to conversations which took place between the decedent and certain witnesses, in which he expressed his intention of going to Washington. Such

declaration of the decedent made at the very moment of
time immediately preceding the act of the defendant com-
pany, by which he lost his life, form part of the *res gestae*,
and were properly admissible.   In support of this view, Mr.
Greenleaf, in his work on *Evidence*, vol. 1, §108, pointedly
observes, that "the affairs of men consist of a complication
of circumstances so intimately interwoven as to be hardly
separable from each other.   Each owes its birth to some
preceding circumstances, and in its turn becomes the pro-
lific parent of others; and each, during its existence, has
its inseparable attributes and its kindred facts, materially
affecting its character and essential to be known, in order to
a right understanding of its nature.   These surrounding cir-
cumstances, constituting parts of the *res gestae*, may always
be shown to the jury, along with the principal fact; and
their admissibility is determined by the Judge, according to
the degree of their relation to that fact, and in the exercise
of his sound discretion, it being extremely difficult, if not
impossible, to bring this class of cases within the limits of a
more particular description."

The plaintiff was entitled to this testimony, as having an
important bearing upon the right of the decedent to be upon
the defendant's property, and pass over a customary way
to the ticket office of the defendant, for the purpose of pur-
chasing a ticket over its road to Washington.   In this view,
it becomes very immaterial how the decedent got from West
Brunswick station to East Brunswick station, if when he
got there he was rightfully on defendant's premises, and
took the same course and traversed the same path usually
taken by passengers and employees of the defendant from
where No. 16 delivered its passengers to the ticket office,
where passengers obtained their tickets for passage on the
express train of the company to the city of Washington.
The chief question in this case, as stated in the appellant's
brief, is, "was Chambers, at the time of his death, a passen-
ger of the appellant and thereby entitled to all the safe-
guards the law throws around one in that position; or, on

the other hand, was he a trespasser, or at most a licensee, to whom the appellant owed much less care and protection." It is conceded to be the well-settled rule that a person is a passenger who enters upon depot grounds by the approaches furnished by the carrier.   The fare does not have to be paid, nor the train entered, but the person must merely enter within the control of the carrier at the depot through the usual channels of business with the intention of becoming a passenger, by either paying fare before or after entering the train.   We have already adverted to this phase of the case and will have occasion to make more particular reference to it, when we come to the consideration of the prayers. The fourth exception is taken to the ruling of the Court below in permitting the time-table of the defendant in force on April 21st, 1894, the day of the accident, to be offered in evidence.   We fail to recognize the force of this objection, or to perceive wherein the defendant is injured by its admission.   The other proof in the record on this subject is doubtless conflicting, but its effect is directly in the same line and not materially variant therefrom.   As part of the same exception, is the objection to the admissibility of Rule No. 441 of the company, in force at the time of the accident.   There is nothing in the record to show that this was a private rule for the guidance of the employees of the appellant, and not intended for the eye of the public, and no reason has been assigned why the rule should not have been open to public inspection, as it was a prudent and justly precautionary measure, beneficial alike to all parties concerned.   If it be true that the rule was only intended for the servants of the company, it was not on this occasion observed by them, but if it had been a rule of the company previously complied with, it was notice from which the public had a right to infer a continuance of the custom. Yet without any rule upon the subject, it was negligence on the part of the company to run its train at a high rate of speed through a station where another train was discharging passengers.   It was unquestionably the right, and we

think clearly the duty of the appellant to have made proper regulations for the safe conduct of its business in the protection of the lives of its passengers, and the preservation of property entrusted to it for transportation.  The rule referred to is as follows: " 441. When one passenger train is standing at a station receiving or discharging passengers on double track, no other train (whether passenger or freight), will attempt to run past until the passenger train at the station has moved on, or signal is given by the conductor of the standing train for them to come ahead."

We think the plaintiff was entitled to the benefit of the rule in evidence before the jury.  Doubtless no such rule would have been adopted by the defendant, even for its own protection, if experience had not demonstrated its absolute necessity.  If the rule was only intended for, the protection of the property of the defendant, it seems to us to be a most salutary precaution to have been followed for the preservation of the lives of the passengers of the defendant, or of those seeking to become passengers.  This Court said, in *Hauer's case*, 60 Md. 449, that, " passengers are justified in assuming that the company has, in the exercise of due care, so regulated its trains that the road would be free from interruption or obstruction when trains stop at a depot or station to receive or discharge passengers."  It thus significantly appears that the doctrine just announced and Rule 441 are closely analogous.

The fifth exception is taken to the refusal of the Court below upon the objection of the plaintiff to permit inquiry to be made as to whether or not the decedent saved anything out of his earnings.  The question was properly excluded, and we think, wholly irrelevant.  At the conclusion of the plaintiff's case, the defendant offered five prayers, all of which the Court rejected.  It will not be necessary for us at this time to give attention to the propositions of law contained in these prayers, as the same questions are again presented at the conclusion of the case, and will then receive consideration.  The Court granted the plaintiff's

first, fourth, fifth, sixth, seventh, eighth, ninth and tenth prayers, and rejected the first, second, sixth, ninth, tenth and twelfth prayers of the defendant. Special exceptions were filed by defendant to first, fourth, fifth, seventh and eighth prayers of the plaintiff, on the ground that they assume as a fact proven that said decedent was about to cross the north track of defendant's road to go to the ticket office of the defendant at East Brunswick station for the purpose or with the intention of procuring a ticket to Washington, that he had business which took him to the ticket office.

To the granting of the said prayers of the plaintiff and the rejection of said prayers of the defendant, the defendant objected. We will first consider the plaintiff's exceptions to first, fourth, fifth and seventh prayers, which have been specially excepted to on the ground just stated. In considering these prayers and the exceptions to them as being without evidence to support them, the relation which decedent held to the defendant at the time of his death, and immediately prior thereto, comes prominently into view. In passing upon the second and third exceptions we had occasion to examine the relevancy of certain conversation offered to show the decedent's intention when he left West Brunswick to go on the train No. 16 to East Brunswick. It is not necessary to a proper determination of the mutual rights of the parties to this record, that we should be governed by the technical definitions of who are passengers and who are not. The question must be decided upon a just ascertainment of all the circumstances surrounding the occurrence. It is not exclusively passengers who have rights against railroad companies when upon their property. But each case must be dealt with as the evidential facts and circumstances determine its character. Now, in this case we think the jury was justified in finding from the evidence that Chambers left West Brunswick station on the day of his death, with the intention of taking an express train at East Brunswick station for Washington. It is wholly im-

material how he got from the one station to the other. There is evidence in the cause from which the jury were at liberty to infer, that when he crossed the railroad track from No. 16 train to the station, he was in quest of a ticket to Washington. He took the same route to the ticket office as that pursued by other passengers and certain employees of the appellant. He was not required under the circumstances of this case, when he reached the track, "to stop, look and listen." This rule is not one of universal application, except in cases when it is applied to public road crossings. It was impossible for passengers or other persons to reach the station from where No. 16 train stopped without walking across the north track. This Chambers sought to do, and lost his life in the effort. He was a book agent much accustomed to railroad travel, and therefore familiar with the risks and dangers incident to such travel; and it is not a reasonable inference to be drawn from the usual conduct of men, that if he had noticed the approach of No. 5 train, he would have deliberately walked to his own destruction. The company, so far as the record discloses, had provided no way of approach or crossing to the ticket office, from where No. 16 accommodation train was discharging its passengers, except across the north track. We think, as hereinbefore indicated in discussing the exceptions to the testimony, that there is evidence in the record from which the jury were at liberty to find, "that the decedent was about to cross the north track for the purpose of procuring a ticket to Washington." His language and his conduct both contribute to the assertion of his purpose and intent. This was the only material question requiring consideration in the plaintiffs' first, fourth, seventh and eighth prayers.

The plaintiffs' fifth prayer is objected to as being misleading. It instructs the jury that if they find from the evidence that Chambers had on the morning of April 21st, 1894, used intoxicating drink, and was slightly intoxicated when he got aboard train No. 16 at West Brunswick, but that he was not drunk at the time of the accident, then such

use of intoxicating drink and such intoxication are not evidence from which the jury may infer want of ordinary care and prudence.   This question has frequently been before the Courts, and views somewhat in conflict are the result. It has been repeatedly held that intoxication of the injured party does not constitute negligence *per se* on his part. *Holmes, adm.,* v. *Oregon, &c., R. R. Co.,* 5 Fed. Rep. 523; *Alger* v. *Lowell,* 3 Allen, 402.   And in the case of the *B. & O. R. R. Co.,* v. *Boteler,* 38 Md. 568, this Court held that intoxication on the part of the plaintiff at the time of the accident did not constitute negligence in law warranting a non-suit or a peremptory instruction for the defendant.   We think the Court committed no error in granting this instruction.   It might have gone farther and submitted the circumstances of the plaintiffs' drinking, and the degree of his intoxication, which the jury would have a right to consider upon the question of due care to be exercised by the decedent, but the prayer is not defective because of this omission. The defendant had the right to such an instruction, but it has no right to complain because it did not request it.   The legal proposition which the prayer embodies is undoubtedly correct.

It necessarily follows from what we have already said respecting the right of Chambers to cross from train No. 16 to the ticket office and station at East Brunswick, that we affirm the ruling of the Court on the ninth prayer of the plaintiff.   In granting the plaintiffs' first, fourth, fifth, sixth, seventh, eighth, ninth and tenth prayers, and the defendant's third, fourth, fifth, seventh, eighth and eleventh prayers, the law of the case has been correctly given to the jury for their guidance.   From the views which we have expressed concerning the prayers of the appellee, little more need be said of the propositions of law submitted by the appellant. Nothing was said in the argument before this Court as to the demurrer to the declaration, and we have treated it as having been abandoned.   But the appellant's sixth prayer contained a proposition which we think is not sustained,

eitherby reasonor authority.  It asks the Courtfor instruction, that if they find that the decedent had been separated from his family for a period of about twelve years immediateiy preceding his death, and that he had contributed nothing to the support of his wife or infant child during that period, that then the plaintiff was only entitled to nominal damages. In this we do not concur.  The marital relation still continued to exist between the parties at the time of the death of the husband, and whilst they had not, for the period stated, lived together as man and wife, her legal rights had suffered no change or impairment.  It is very clear from the testimony in the record, that the wife had not, by her own wrong, forfeited her right to a decent support from her husband in accordance with her station in life.  The marital relation created this right, and it continued to exist in law to the death of the husband, and this, too, without reference to the will or wishes of the husband.  When this prayer is viewed in connection with the appellant's fifth prayer, which was granted, and which allowed the jury, in estimating damages, to take into consideration all of the facts stated in the sixth prayer, we fail to find any error in its rejection.  From a careful consideration of the whole case, we find no error in the rulings of the Circuit Court upon the testimony or the prayers, and therefore affirm its rulings.

*Judgment affirmed with costs.*

(Decided June 18th, 1895.)