## RIGHTS OF A DROVER RIDING ON A FREIGHT TRAIN.

[Circuit Court of Cuyahoga County.]

LAKE SHORE & MICHIGAN SOUTHERN RAILWAY v. SAMUEL C. HOTCHKISS.*

Decided, January 26, 1903.

*Carriers—Drover Traveling on a Freight Train—Is a Passenger While Walking Along the Tracks to Reach the Caboose—Degree of Care Required in so Doing—Negligence in Operating Trains.*

1. One traveling on a freight train in charge of live stock is a passenger although paying no fare in addition to the freight charges on the stock, and is entitled to protection from injury while walking along the track at the direction of one of the company's agents to reach the caboose.
2. Where such a passenger is injured while thus attempting to reach the caboose, questions as to his own negligence and that of the railway company should be submitted to the jury.
3. Failure upon the part of one thus walking along the track to use ordinary care in keeping out of danger would constitute contributory negligence.

MARVIN, J.; CALDWELL, J., and HALE, J., concur.

Error to court of common pleas.

The parties in the court of common pleas were the reverse of what they are here. In this opinion the terms plaintiff and defendant refer to the parties as they were in the court of common pleas.

On August 19, 1899, the plaintiff made a contract with Thomas M. King, receiver of the Pittsburg & Western Railway Company, he being in the operation of the road of said company, by which two carloads of live stock were to be transported for the plaintiff from Middlefield, in Geauga county, Ohio, to East Buffalo, in the state of New York, over the road operated by said receiver and connecting lines. The only connecting line over which this stock was to be transported was the line of the defendant. The contract, among other things, had the following provisions:

*Affirmed by the Supreme Court without report, December 1, 1903.

"That whenever the person or persons accompanying said stock under this contract to take care of the same shall leave the caboose and pass over or along the cars or track of said carrier, or connecting carriers, they shall do so at their own sole risk of personal injury, from whatever cause, and neither the said carrier, nor its connecting carriers, shall be required to stop or start their trains or caboose cars at or from the depots or platforms, or to furnish lights for the accommodation or safety of the persons accompanying said stock to take care of the same under this contract.

"And it is further agreed by said shipper that in consideration of the premises and of the carriage of a person or persons in charge of said stock upon a freight train of said carrier, or its connecting carriers, without charge other than the sum paid or to be paid for the transportation of the live stock in charge of which he is, that the said shipper shall and will indemnify and save harmless said carrier and every connecting carrier, from all claim, liabilities and demands of every kind, nature and description, by reason of personal injury sustained by said person or persons so in charge of said stock, whether the same be caused by the negligence of said carrier or any connecting carrier or any of its or their employes or otherwise."

The two cars were loaded with live stock at Middlefield on said August 19, and on the morning of August 20, about three o'clock, the train, of which said cars formed a part, reached Painesville, on the line of the defendant, where the cars were to be taken into a train on the defendant's road. The plaintiff accompanied these cars and was to go on with them in charge of said live stock to their destination at East Buffalo. The plaintiff went to the station of the defendant and reported his cars as having arrived, and a locomotive engine of the defendant was sent out to switch these two cars onto the defendant's line of road and connect them with a freight train to go east on its line. To get to that part of the defendant's line of road where these cars were to be attached to the east-bound train of the defendant a considerable distance had to be traveled, and, at the invitation of the engineer of the locomotive which did the switching, and which was the locomotive which was to haul the train east, the plaintiff rode with the engineer on the engine. This same engineer remained with the engine to take the train east.

When the cars containing the plaintiff's live stock were properly in the defendant's train, the engineer stated to the plaintiff that he must now go back to the caboose of that train to ride. The defendant's line has a double track. The trains going to the east use the northerly and those going west the southerly track. The plaintiff, upon receiving this notice from the engineer, alighted from the locomotive on the north side, passed around in front of the engine to the south side, and there had a conversation with the engineer, the substance of which was that as this train contained some sixty cars, it was a long distance to the caboose, and he cautioned the engineer not to start his train until he (the plaintiff) should have time to reach the caboose. To this the engineer replied that if he did start the train he would wait until the plaintiff had nearly reached the caboose, and would then start so slowly that he would have no difficulty in getting upon the car.

The distance between the north rail of the southerly track and the south rail of the northerly track was the usual distance of about seven feet. Between these tracks was a hard, good path for walking and one which those employed about these yards were accustomed to use. On the north side of the north track the condition of the ground was much less favorable for walking, though one could without very great inconvenience walk along on the north side. The plaintiff started west toward the caboose, on the south side of this train, between the two tracks. If freight cars were standing on each track opposite to each other, the distance between the cars would be about forty-seven inches. The engineer knew that the plaintiff had taken this pathway between the two tracks for the purpose of reaching the caboose. From the point where this engine stood one could see to the east along the tracks for a long distance. There was no west-bound train coming in sight of the plaintiff when he started to walk toward the caboose. When he had gone some distance to the west, perhaps half-way from the engine to the caboose, a freight train coming from the east at from thirty to thirty-five miles an hour came in sight of the engineer of this east-bound train. The plaintiff, hurrying on to take his place in the cabobose, did

not look around to see whether anything was coming on the south track. When, however, he had got within three or four cars of the caboose, he heard some unusual noise, and looked over his shoulder and saw the west-bound train coming at a distance, as he thinks, of from seventy-five to one hundred feet from him. Of course, this estimate is necessarily somewhat indefinite. At this time the east-bound train, which he was to take, was moving slowly, the engineer having just before started, as he had said to the plaintiff that he would. The plaintiff hurred on toward the caboose, and just before reaching it was struck by a car in the west-bound train and injured. He brought suit against the defendant to recover damages for this injury, charging that such injury was due to the negligence of the defendant in starting its east-bound train while he was in and known to be in a perilous position, where he would be likely to be injured if the train started.

The trial of the case resulted in a verdict for the plaintiff. Motion for a new trial made by the defendant was overruled, and after a remittitur of a part of the damages allowed by the jury, judgment was entered for the plaintiff against the defendant for the balance. The present proceeding is brought for the purpose of reversing that judgment.

On the part of the defendant it is urged that it was not an act of negligence on its part to start its train as it did, and that, even if that were negligent, the plaintiff contributed by his own negligence to the injury which he received in not keeping a lookout for trains on the southerly track, and that it was negligence on his part not to have gotten out of the way of the west-bound train after he saw it.

The question of the relative duties of the plaintiff and the defendant depends largely upon the relation which at the time they sustained to each other.

It is conceded by the defendant that if the plaintiff was then a passenger upon its road, its duties would be very different from what they would be were he but a licensee, which, it is urged, he was at that time, and in support of this contention attention is called to the language of the contract, in which it is provided that ''whenever the person or persons accompany-

ing said stock under this contract, to take care of the same shall leave the caboose and pass over or along the cars or track of said carrier, or of connecting carriers, they shall do so at their own sole risk of personal injury, from whatever cause," etc.

Whether this clause of the contract could in any wise affect the right of the plaintiff to recover if this accident had happened at some point on the defendant's line where the plaintiff had alighted from the caboose and gone along the track to look after his stock or not, we think it does not affect his right to recover under the circumstances of *this* case. The plaintiff had not yet reached the caboose, where he was to ride. He was on his way to get on board of the train, and, as we think, was entitled to the rights of any passenger of the railroad company.

In the case of *Cleveland P. & A. Ry. Co.* v. *Curran,* 19 Ohio St., 1, it is held that one traveling on what is designated a "drover's pass," and which, together with the contract for the transportation of live stock, constituted the contract between the shipper and the railroad company, was a passenger of the railroad company both in going with his stock and in returning on another train. And in the same case it is held that a provision in the contract between the shipper and the railroad company which is, if not in exactly the same words, surely in substance the same as the last clause heretofore quoted from the contract in *this* case, is void as against public policy. This last doctrine has been repeatedly affirmed by our Supreme Court. See *Union Express Co.* v. *Graham,* 26 Ohio St., 595; *Cincinnati, H. & D. Ry. Co.* v. *Pontius,* 19 Ohio St., 221; *United States Express Co.* v. *Backman,* 28 Ohio St., 144; *Telegraph Co.* v. *Griswold,* 37 Ohio St., 301.

In the case of *Chicago & A. Ry. Co.* v. *Winters,* 51 N. E. Rep., 901 (175 Ill., 293), it is said, in the second clause of the syllabus:

"The relation of carrier and passenger still exists when a passenger is obliged to alight from a car to go to another car, to be carried by the carrier to his destination."

And the third clause reads:

"A stockman traveling with the consent of the railroad company on a freight train, in charge of stock carried by the company for him, is a passenger."

Unless, then, in this case the defendant exercised that care for the protection of the plaintiff which it owed to its passengers, it was negligent, and, under proper instructions, it was a question for the jury to determine whether it did exercise such care.

In the case to which attention has last been called, the fourth clause of the syllabus reads:

"Where a train has reached a point where the passenger may lawfully leave it, and no direction is given him to alight on the side of the train where there is no danger, but he is permitted to alight on the side where there is danger, it is for the jury whether reasonable care for the safety of the passenger has been used by the railroad company."

Attention is called to the case of *Railroad Co.* v. *Perry*, 58 Ga., 461. In this case the plaintiff had purchased a ticket from the railroad company at Macon, entitling him to ride on the train of the railroad company to Savannah, both in the state of Georgia. He, after having purchased the ticket, fell into conversation with a friend in the car shed near the ticket office. The train, at its proper time, started out without his observing the signals. Noticing that the train had started, however, he started in pursuit, being very near to the train. An engine standing on a track which led onto the tracks on which the train was, had waited for the train to pull out and then started up, as it had a right to do, and the plaintiff came in contact with that engine and was injured. The court say, on page 468, in the fifth subdivision of the opinion:

"It is for the jury to say whether the danger of pursuing and boarding a train when in motion was, under the circumstances, so apparent as to make it the duty of the passenger not to undertake it, or to desist from the attempt before he was injured."

In the present case we think the facts are not such as would warrant a court in saying, as matter of law, either that the defendant was without negligence in starting its train, or that the plaintiff was guilty of such contributory negligence as to bar a recovery. Without doubt, the danger to the plaintiff in being between the two trains was greatly increased by the start-

ing of the east-bound train. Had that train remained stand-ing, with the space of forty-seven inches between its cars and those of a swiftly moving train going west, it would have en-abled him to lean against or hold onto the cars of the north train, and so avoid danger. There can be no doubt that the engineer of this train on the north track knew before he started his train that the other train was coming rapidly from the east. He knew also that the plaintiff had started down the pathway between the two tracks on his way to the caboose, and must have known that if the west-bound train passed him while he was thus between the tracks and while his own train was in motion, he would be in a highly dangerous position. Perhaps he might have thrown himself upon the ground and thereby have escaped injury. It is possible that after he knew of the approach of the west-bound train he could have crossed the southerly track and got out of the way of danger, yet this last is very doubtful, and it is not probable that a cautious man would have risked it, and it is very doubtful whether, in the very short space of time in which the plaintiff must have de-termined what to do, it would have occurred to the average prudent man to throw himself upon the ground.

The duty of a railroad company to its passengers requires a very high degree of care on the part of the company. In the case of *Wabash Ry. Co.* v. *Skiles,* 64 Ohio St., 458, Judge Davis, in his opinion at page 471, uses this language:

"It has been laid down as the law that passengers who are required to cross railroad tracks in getting upon or alighting from trains, have the right, from the nature of their contract, to expect a safe place for that purpose, and may govern them-selves accordingly."

Attention is called to the case of *Baltimore & Ohio Ry. Co.* v. *State,* 32 Atl. Rep., 201 (81 Md., 371), a case decided in the court of appeals of Maryland in 1895. In this case the party injured was not a passenger, but had alighted from one train and was taking the usual course to the ticket office of the B. & O. Railroad Company to purchase a ticket from East Bruns-wick to Washington. This language is used, on page 203, in the opinion:

"He took the same route to the ticket office as that pursued by other passengers and certain employes of the appellant. He was not required, under the circumstances of this case, when he reached the track, to 'stop, look and listen.' This rule is not one of universal application except in cases when it is applied to public road crossings."

In the case of *Railroad Co.* v. *State*, 63 Md., 135, the party injured had purchased a ticket at the station, and, in order to take her train, she was required to cross the railroad track to reach a platform on the opposite side of the track from that on which was the station or ticket office. She had not yet got upon any car of the company, but it was held that she was a passenger entitled to all the protection of a passenger, and further, it was said, on page 144, in the opinion:

"If she had purchased a ticket and was crossing the track by and under the direction of the ticket agent for the purpose of taking the train, she is to be considered as a passenger, and as such entitled to the rights and protection of a passenger, and it was the duty of the agent, so far as human care and prudence could, to guard against exposing her to danger."

Under the authorities to which attention has been called, and many others to the same effect, we think it clear that the defendant was not entitled to a direction to have a verdict returned for it; and this disposes of the first exception taken to the refusal of the court to charge as requested by the defendant.

Exception is taken to the refusal of the court to charge a considerable number of requests made by the defendant. The first of these, which was that the jury be directed to return a verdict for the defendant, was, as has already been said, properly refused. The second request reads:

"If the court refuse defendant's first request to charge, then defendant requests the court to charge the jury that under the circumstances of this case, plaintiff, while passing over and along the tracks of defendant, was not a passenger; and that in the conduct and management of its road and trains it was not bound to anticipate plaintiff's presence at the place mentioned in the petition, nor to modify its usual and customary methods of maintaining and operating its railroad on account of his presence in that place."

What has already been said in this opinion necessarily results in holding that this request was properly refused. Complaint is further made that the court refused to give in charge the fifth request of the defendant. That request reads:

"If the court refuse defendant's first request to charge, then defendant requests the court to charge the jury that if they find that plaintiff made a contract, by the terms of which he was permitted to ride upon the freight train of defendant in charge of his stock, upon certain conditions, among which were the following:

" 'That whenever the person or persons accompanying said stock under this contract, to take care of the same, shall leave the caboose and pass over or along the cars or track of said carrier, or of connecting carriers, they shall do so at their own sole risk of personal injury, from whatever cause, and neither the said carrier, nor its connecting carriers, shall be required to stop or start their trains or caboose cars at or from the depots or platforms, or to furnish lights for the accommodation or safety of the persons accompanying said stock, to take care of the same under this contract.' And if you shall further find that plaintiff was in fact passing over or along defendant's track at the time of the injury complained of, he did so at his own risk of personal injury from whatever cause. And defendant owed him no duty except after becoming aware of his dangerous position to refrain from wantonly or wilfully injuring him."

There was no error in refusing this request. The views of the court in regard to it are expressed in what has already been said in this opinion.

Requests seven, eight and nine each bear upon the question of the care which the plaintiff was bound to exercise, and put upon him the same care which would have been required of him had he been a licensee of the defendant instead of a passenger. Holding, as we do, that he was a passenger of the railroad company, the court properly refused these requests. The eleventh request reads:

"If the court refuse defendant's first request to charge, then defendant requests the court to charge the jury that if you shall find that plaintiff saw or heard the train coming on the south main track in time to have stepped across it and from the space between the main tracks, but tried to get to the caboose in ad-

vance of the oncoming train, then he assumed the hazards and perils of such a course and he can not recover from defendant any damages he may have sustained by reason of his action.''

This request was properly refused. In the main, it states a proposition which should have been given, but if this had been given, it would have put upon the plaintiff the obligation of determining whether he could pass to the south and across the south track to a distance far enough from the track to be safe after he knew of the coming of the train. It is certain that the time after the plaintiff knew of this coming train and the time it reached him was very brief. To say that he must have determined at once that he could get across, and if, as a matter of fact, he could, although to all appearances it was very doubtful whether he could, would be to require more of this man than can be expected of an ordinarily prudent man. If he could have thus got across, and if it was so plain that he could have thus got across that a prudent man would have risked it, then it might well be required that he should have thus got across; but in a case where it is so doubtful whether he could have made it, to say that if he possibly could he must have done it, is to require more prompt judgment than the law requires of the ordinarily prudent man.

The twelfth request reads:

''If the court refuse defendant's first request to charge, then defendant requests the court to charge the jury that it is no excuse for the plaintiff that he was afraid that he might lose the train on which he was about to go, and that the fact that the train on the north track was moving and he was apprehensive that if he stepped across the south track and from between the main tracks, he might lose his train, this would not justify him in remaining in such a perilous place.''

We think there would have been no error in giving this request and it would not probably have misled the jury, yet perhaps it is putting it stronger than it should be to say that the facts suggested would be no excuse for the plaintiff, though certainly it is true that they would not justify the plaintiff for remaining in a perilous place. The court, however, charged the jury on the subject of this request, and, as we think, fully

covered the proposition and correctly stated the law to the jury. On pages 154 and 155 of the record this language is used in the charge:

"I say to you further that, though you may find the company was negligent in directing or permitting, with its knowledge, if you find it had the knowledge, the plaintiff to walk between the tracks in going to the caboose, and that he was thus put in a place of danger, it would yet be the duty of the plaintiff, upon discovering that he was in a place of danger, to exercise ordinary care to prevent injury to himself; and if the plaintiff (after the discovery that he was in a place of danger) failed to go to a place of safety, if there was reasonable opportunity to find a place of safety, this would be such contributory negligence as would defeat his recovery."

Complaint is made to the charge of the court, and especially to this language used in the charge.

"It is contended by plaintiff that even though it might have been a safer course to have gone on the outside of the tracks instead of between the tracks to reach the caboose, that the defendant, through its agents, knew in ample time of the imminent danger of plaintiff to have obviated the danger and injury to plaintiff. In this connection I say to you that, though the plaintiff may have put himself in a place of danger negligently, yet if the defendants, through its servants and agents, apprehended, in time, the dangerous position of plaintiff, by the exercise of ordinary care, to have prevented the same, it was the duty of the company through its agents to do so, and that if the company, by the exercise of ordinary care, after such discovery, could have saved plaintiff from the injury, then the failure of the company in this respect would be the proximate cause of the injury, and the negligence of the plaintiff would not, under such circumstances, bar his right to recover."

If this language was so used as to be understood by the jury as meaning that though the negligence of the plaintiff continued up to the instant of his injury, still he might recover if the defendant was negligent, it would have been erroneous, but, taken in connection with the language immediately following, which is that heretofore quoted from the charge, and together, the law is stated as we hold it to be. The court distinctly stated that if the plaintiff, when he knew of his danger,

failed to exercise proper care to save himself, he could not re-
cover.   We find nothing in the charge of the court as given,
or in the refusal of the court to charge as requested, or in the
facts of the case, to justify a reversal, and the judgment of
the court of common pleas is affirmed.

*Brewer, Cook & McGowan*, for plaintiff in error.

*Kline, Carr, Tolles & Goff*, for defendant in error.