FANNIE ROTHSTEIN AND MILTON ROTHSTEIN, EXECUTORS OF THE LAST WILL AND TESTAMENT OF SAMUEL ROTHSTEIN, DECEASED, PLAINTIFFS-APPELLANTS. v. NEW YORK AND LONG BRANCH RAILROAD COMPANY AND THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANTS-RESPONDENTS.

Submitted October 28, 1938—Decided January 13, 1939.

For the plaintiffs-appellants, *Parsons, Labrecque & Borden.*

For the defendant-respondent The Pennsylvania Railroad Company, *John A. Hartpence.*

For the defendant-respondent New York and Long Branch Railroad Company, *Applegate, Stevens, Foster & Reussille.*

The opinion of the court was delivered by

DONGES, J.   The plaintiffs-appellants are the executors of Samuel Rothstein and their action is under the Death act against the New York and Long Branch Railroad Company, owner of the station and railroad tracks at Long Branch, and The Pennsylvania Railroad Company, operator of a train over said tracks which ran over and killed Rothstein at the Long Branch station.   Trial was had at the Monmouth Circuit and a judgment for defendants was directed by the trial judge.

Due to the death of the court reporter after the trial, we do not have before us a stenographic transcript of the testimony.   Instead, the parties have entered into a stipulation setting out the substance of the evidence given at the trial by the various witnesses.

Plaintiffs' testate was the principal owner of a factory at Long Branch and received therefrom a salary of $15,000 a year.   The most favorable version of the evidence for the plaintiffs' case would appear to be that on the morning of April 22d, 1935, at seven o'clock, he went to his factory and talked to a foreman over the day's work.   He stated that he was going to New York on the seven-twenty train.   He went from the factory to the station, purchased a newspaper and walked toward the train which was standing at the platform receiving passengers.   As he neared the train, he stumbled or tripped over some loose bricks in the paving of the platform and pitched headlong under the train.   Instantly the train started to move and he was decapitated.

No question is raised as to the adequacy of the proofs on the question of negligence.   It seems to be conceded that

there was proof of the faulty condition of the platform and of the manner of decedent's death sufficient to raise a jury question.

There was evidence, uncontradicted, that decedent had not purchased a ticket at the ticket office on the morning of the occurrence. In his clothes was found a wallet containing a commutation ticket between Long Branch and New York issued to Milton Rothstein, son of the deceased. This ticket was non-transferable and could be used only by Milton. There was no money in the wallet. No complete search of decedent's pockets was made, and therefore there is no evidence as to what else he may have had upon his person. Whether or not he had money or a previously bought ticket for transportation does not appear.

The stipulation reads:

"At the close of the case, counsel for the defendants moved for a direction of a verdict upon the ground that Rothstein had purchased no ticket, no ticket was found in his wallet and he was, therefore, not a passenger to whom the railroad owed no duty and upon the ground that Rothstein had purchased no ticket and had no ticket excepting the commutation book in the name of Milton Rothstein, who was the son of decedent, which was found on his person, and, therefore, there was no contractual relation between decedent and the defendants, and he was, therefore, not a passenger and the defendants owed no duty to decedent other than to refrain from willful injury.

"The defendants further moved for a direction of a verdict upon the ground that upon the facts, the decedent was a trespasser to whom the defendants owed no duty other than to refrain from willful injury. The trial court granted the motion for the direction of a verdict in favor of the defendants upon the grounds that the decedent was a trespasser and that no contractual relation existed between the decedent and the defendants and allowed exceptions to such action to the plaintiff."

The situation is, therefore, that the court held there is nothing in the evidence from which a jury could properly

find the decedent was a passenger, and that as a matter of law he was a trespasser.

In *Trapnell* v. *Hines* (*Third Circuit*), 268 *Fed. Rep.* 504, it was said: "The relation of carrier and passenger commences when a person with a *bona fide* intention to take passage, with the consent of the carrier, express or implied, assumes a situation to avail himself of the facilities of transportation which the carrier offers."

In *McFeat* v. *Philadelphia, &c., Railroad Co.,* 69 *Atl. Rep.* 744, it was said by the Supreme Court of Delaware: "It is not necessary, to constitute him a passenger, that he should have had a ticket, or that he should have been actually upon the train of the defendant. If you believe that it was the *bona fide* intention of Walter McFeat, at the time of the accident, to board the defendant's train, and that the defendant had knowledge of that fact, or that the acts and conduct of the deceased and the other facts and circumstances were such as to reasonably inform or notify the defendant that he intended to board the train, he was entitled to such care and protection on the part of the defendant as is required by the law where the relation of passenger and carrier exists."

There are many cases from other jurisdictions cited in the brief of the appellants upholding this proposition. The Court of Appeals of Maryland, in *Baltimore and Ohio Railroad Co.* v. *State,* 32 *Atl. Rep.* 201, said: "It is conceded to be the well settled rule that a person is a passenger who enters upon depot grounds by the approaches furnished by the carrier. The fare does not have to be paid, nor the train entered, but the person must merely enter within the control of the carrier at the depot, through the usual channels of business with the intention of becoming a passenger by either paying fare before or after entering the train."

There are certain presumptions arising from the conduct of the decedent, and these presumptions must be overcome by complete proof before it can be said that as a matter of law decedent was not an intending passenger. The decedent announced his intention of going to New York on this particular train. He went to the station at train time; bought

a paper and started toward the train standing at the station (in fact some of defendants' witnesses testified that he attempted to board the train while it was in motion, and fell in that way). So there can be no doubt that it was his intention to get on the train. In fact, respondents' briefs concede that it was decedent's intention to board the train. They rely principally upon the presence in decedent's wallet of the commutation ticket issued to his son, which he could not lawfully use. From this they argue that there appears a conclusive intention to make improper use of this ticket and cheat the railroad out of its fare. This would have been an unlawful thing to do and it is settled that there is no presumption of an intent to commit crime.

Respondents further say that there is no proof that the decedent had any other ticket or any money in his possession with which to pay his fare in cash upon the train. But, as stated above, what he had upon his person other than the articles mentioned does not appear. Respondents argue it was incumbent upon plaintiffs to affirmatively establish the relationship of passenger and carrier, and that it was part of plaintiffs' case to show decedent possessed either a ticket or money with which to pay the fare. On the contrary, we have a situation where decedent's course of conduct clearly indicates an intention to board the train as a passenger. Against that we have merely his possession of a ticket which he could not use. From these facts a question of fact, at least, arose, and from these facts a jury would be justified in finding that the relation of passenger and carrier existed. To hold otherwise is to infer a criminal intent from the mere possession of the ticket of his son.

A similar situation was presented in *Louisville, &c., Railroad Co.* v. *Thompson*, 8 *N. E. Rep.* 18. There a decedent was found to have in his possession a railroad pass issued to another. The Supreme Court of Indiana said: "There is, as we have intimated, no evidence that he procured the pass fraudulently, or was attempting to travel on it, except such as is supplied by the fact that after his death the pass was found in his pocket. For anything that appears, he may have

been the mere custodian of it for Whaling. The presumption always is in favor of honesty and fair dealing, and he who asserts the contrary must prove it. A presumption, like a *prima facie* case, remains available to the party in whose favor it arises until overcome by countervailing evidence. * * * We cannot consent to characterize an act as fraudulent from the single fact that on a dead man's body is found a pass issued to another person."

The New Jersey cases relied upon by respondents are not in point. *Petrie* v. *P. R. R. Co.*, 42 *N. J. L.* 449; *Jardine* v. *Cornell et al.*, 50 *Id.* 485; *Spiess* v. *Erie Railroad Co*, 71 *Id.* 90, and *Shelton* v. *Erie Railroad Co.*, 73 *Id.* 558, all deal with the right of the railroad to eject passengers who do not have a proper ticket and refuse to pay cash fare. *Breese* v. *Trenton Horse Railroad Co.*, 52 *Id.* 250, deals with pleading, the allegation of plaintiff being that he was on a car of defendant, when he should have pleaded that he was a passenger thereon in order to require the exercise of the care to which a passenger is entitled.

We conclude that, in the situation presented, it was error to direct a verdict for the defendants.

The judgment under review is reversed, and a *venire de novo* awarded, costs to abide the event.

*For affirmance*—Trenchard, Parker, Case, Bodine, Heher, Wells, JJ. 6.

*For reversal*—The Chancellor, Chief Justice, Donges, Perskie, Porter, Hetfield, Dear, WolfsKeil, Rafferty, Walker, JJ. 10.