# AVERY TODD MALONE

## *vs.*

## ANNIE R. TOPFER.

*Seduction*: *who may maintain action for—; parents; loss of right. Judgment*: *striking out; during term; valid reasons must always be assigned.*

A parent may destroy the rights of the relation of master and servant by abandonment, neglect or cruelty; but in what manner and by what acts this can be done, must depend upon the special circumstances of each case. p. 161

During the minority of a child, anyone standing *in loco parentis,* in whose service she is, may maintain an action for damages for the loss of services through her seduction by the defendant. p. 160

A father had abandoned his family, and been divorced from his wife; he contributed practically nothing to the daughter's support, and neither received nor claimed any service from her; the daughter lived with and helped the mother: *Held,* that in such a case, the mother could maintain an action for her seduction. p. 162

When passing upon motions for striking out judgments which are made during the term, courts usually act liberally; but such judgments are not to be stricken out whenever such a motion is made during the term, nor as a mere act of form or caprice; but there must always be reasonable proof of circumstances which make it inequitable that the judgment should stand.

p. 163

The fact that an action growing out of the same cause has been instituted by another party, is no ground for striking out a judgment, especially when it appears that such other action could not be maintained.                                    p. 164

*Decided January 20th, 1915.*

Two appeals from the Circuit Court for Dorchester County. (PATTISON, C. J., JONES and STANFORD, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alonzo L. Miles* (with whom was *E. Stanley Toadwin* on the brief), for the appellant.

*Alexander M. Jackson,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The record in this case involves two appeals; one an appeal from a judgment rendered against the appellant in a suit for damages for the seduction of the minor daughter of the plaintiff; the other, an appeal from the action of the Circuit Court for Dorchester County in refusing a motion to strike out the judgment which had been entered. These appeals will be considered in order.

In the first appeal seven exceptions were reserved; six relating to evidence, and the seventh to the action of the trial Court upon the prayers; but they all present one and the same question, and need not be discussed in detail.

The material issue in the case is, whether the mother of a girl who has been seduced can maintain an action for damages for the seduction, the father being still alive, but the

mother having been divorced from the father by a decree of a
Court of competent jurisdiction. No question is involved
in this case of the right of a father to sustain such an action,
but the contention of the appellant is that the mother has no
such right. Whether the mother, after the death of the father
has a right of action for the seduction of a minor daughter.
there being in fact no relation of master and servant between
them, has been a matter of some discussion. The English
Courts have held positively that no such right exists, and
the Courts in this country are divided. In *Logan* v. *Murray,*
6 S. & R. 175, and in *South* v. *Denniston,* 2 Watts. 477, the
right to maintain such action was expressly denied, it being
said by GIBSON, C. J., in the latter case, that "nothing is
more sure than that a mother is not entitled to the service of
her child by the common law." So in *Bartley* v. *Richtmyer,*
4 N. Y. 38, BRONSON, J., says that in his opinion the mother
has no such right; while *in re Rider,* 11 Paige, 185, CHAN-
CELLOR WOOLWORTH is equally emphatic that the mother has
the right. In *Gray* v. *Durland,* 50 Barb. 100, the question is
ably examined and the decisions on both sides of the ques-
tion presented, and the Court comes to the conclusion, that
a mother has the same right to the services of a minor child
that the father would have, if living. This is also the view
of the Courts in Massachusetts (*Dedham* v. *Natick,* 16 Mass.
135); New Hampshire (*Hammond* v. *Corbett,* 50 N. H.
501); Connecticut (*Mathewson* v. *Perry,* 37 Conn. 435);
New Jersey (*Coon* v. *Moffett,* 3 N. J. L. 436), and Tennessee
(*Parker* v. *Meek,* 3 Sneed, 29). The lower Courts in New
York favored the right of action by the mother, but the sub-
ject did not come before the Court of Appeals until *Furman*
v. *Van Sise,* 56 N. Y. 435, when the Court passed on the ques-
tion for the first time, and sustained the right of action by the
mother, holding affirmatively a right to the service of the
minor children by the mother, and thus overruling so much
of the dicta of *Bartley* v. *Ritchmyer,* as denied it. This case
was subsequently approved in Massachusetts in *Blanchard* v.

*Ilsley,* 120 Mass. 487. So it may be concluded on the whole, that as a general proposition the right to maintain such an action on behalf of the mother is sustained.

The case of *Parker* v. *Meek, supra,* goes further than any of the other cases, and it is doubtful whether Courts in other jurisdictions would be prepared to go to the length the Court did in that case, as there a recovery was allowed on the suit of the mother for the seduction of a daughter who was an adult.

If we turn from the decisions elsewhere to those in this State, the important case is that of *Keller* v. *Donnelly,* 5 Md. 217, in which JUSTICE LE GRAND, after quoting from the case of *Mercer* v. *Wamsley,* 5 H. & J. 27, says, "But whatever may be the true character of the guardianship which the common law casts upon the mother, one thing is certain, that during the minority of the child *any one standing in loco parentis,* and she being in her service, may maintain an action."

None of the cases referred to, however, are cases in which the parents had been legally separated by a divorce, but both were still living at the time of the suit. They have all arisen where the father had died, either after the seduction, or in any case before the suit was brought. So far as the industry of counsel has been able to bring to the attention of the Court, or the examination which the Court has made, has extended, there has been no case in which the element, now presented of the parents being divorced has entered into it, and to this extent the case must be one of first impression. If the decree of divorce had in terms conferred the guardianship and control of the minor child upon either parent, it needs no argument to demonstrate that the parent to whom such guardianship had been committed would be entitled to bring and maintain the suit; but in this case the decree was entirely silent upon that point.

Whether either parent has by his or her act forfeited the parental rights with respect to their child, has several times

been considered. If such be the case the parent so forfeiting his or her right, would thereby be debarred from maintaining such an action as the present one. That a parent may destroy the relation by abandonment, neglect or cruelty seems well established, but "in what manner and by what acts this can be done must depend upon the special circumstances in each case." *Greenwood* v. *Greenwood, 28* Md. 381.

This makes necessary a summary of the facts brought out by the testimony. At the time when the divorce was granted, Mr. Topfer was in Philadelphia, Mrs. Topfer in Pittsburg on a visit, and the daughter, Hazel, in Salisbury with her grandmother, whom she helped in the performance of various household duties. The divorce was granted in January, 1912, and in the fall Mrs. Topfer returned to Salisbury. At that time Hazel had left her grandmother's home and was boarding with a Mrs. Coulbourn, her mother paying the board. While it is not directly so testified, the apparent occasion for this change was that Hazel had secured employment with the Telephone Company. Upon Mrs. Topfer's return to Salisbury, Hazel left Mrs. Coulbourn's, and thereafter made her home with her mother. The pay she received from the Telephone Company was small, and except upon one occasion, it was turned over to her mother, who used it in her home and in providing clothing for Hazel. In March, 1913, Hazel had to give up her position because of her condition, and from that time until her child was born in July she helped about her mother's house, cooking, washing, ironing and caring for two little girls. During all of this time, from January, 1912, to July, 1913, Mr. Topfer made no demand whatever upon her for any service, and so far as the evidence for the plaintiff discloses contributed nothing towards her support. When she was about to be confined her mother purchased some underclothing for her, a few infant's clothes. and took her to Baltimore to the University Hospital. After her confinement and the death of the child, she returned to Salisbury for a time, just how long does not clearly appear.

The defendant offered no testimony in contradiction of any of this evidence, but contented himself with the introduction of two letters written by Hazel, which showed nothing more than that the relations between mother and daughter were far from pleasant, that the latter was very unwilling to injure the defendant in any way, and that Mrs. Topfer made her daughter's life very unhappy.

Upon this evidence there is no room for argument that the mother was the parent who assumed sole control over the daughter, and that the rights of the father at common law were forfeited, if not abrogated. Upon the motion to strike out the judgment, the father was placed upon the stand, but he did not contradict any of the material allegations of the plaintiff. His testimony showed that from Philadelphia he had gone to Indianapolis, and then returned to Baltimore. That an irregular correspondence had been maintained between him and his daughter also appears. He claims to have sent her five dollars upon one occasion; on another to have bought her a dress, and to have paid her board for two weeks in Baltimore during the three months she spent there in the fall after her child was born. When she paid that visit, he told her, "You can stay here as long as you want to work and pay your board; the rest of the money you can keep for your clothes." He does not claim that she rendered him any service, or that he ever demanded any of her. Various letters from her to her father were offered, and even if these were admissible in evidence, which they clearly were not, they would show nothing more than the unhappy relations between the mother and daughter.

If this evidence of the father, which was not offered until the hearing of the motion to strike out the judgment, had been produced at the hearing of the case, it would not have established any right of service, due to him, which he had not forfeited by his abandonment and neglect. The action of the Circuit Court must, therefore, be sustained upon the main branch of the case.

At the same term at which the judgment was entered a motion was made to strike it out, and six grounds were assigned. These can be briefly disposed of. The fifth was purely formal and calls for no comment. The law governing such applications is clearly and concisely stated by Mr. Poe (II Poe, sec. 392), when he says: "In passing upon applications to strike out judgments, when such applications are made during the same term at which the judgments were entered, our Courts usually act liberally; and upon reasonable proof of merit, and other equitable circumstances, strike out the judgments and let the defendant in to be heard." This does not mean that a judgment will be stricken out whenever asked to be, or as a mere act of favor or caprice, but that there must be reasonable proof of circumstances which make it inequitable that the judgment should be allowed to stand.

The first ground assigned is fraud and deceit in the obtention of the judgment, but no fact is alleged as constituting the fraud, and nowhere in the proof offered under the motion is any fraud or deceit disclosed in support of the allegation.

The second ground is that the judgment was obtained as the result of false testimony and fraudulent misrepresentations made by the plaintiff in her testimony. This allegation appears to be based on the language of the plaintiff, that she did not know whether she had a husband living, that she had never seen him since they were divorced. In this she is to some extent corroborated by her husband, who testified that his first visit to Salisbury after the divorce was to attend the funeral of his daughter, which took place after the trial of the case. This cause assigned in the motion is not borne out by the proof.

The third ground was the legal question of the relative rights of the father and mother to maintain the action, and alleges as a fact that the father exercised control over and contributed to the support of his daughter from the time of the divorce until the time of her seduction. Both of these have already been considered as fully as seems necessary in discussing the main branch of the case.

The fourth cause assigned is that John Topfer, the father, had instituted a suit in Wicomico County on the same cause of action.   But it is no ground for striking down a judgment which has been validly entered, that some other person has brought a suit, which can not be maintained upon the evidence adduced in this case, or in support of the motion upon the same claim.

And lastly the defendant avers that he has a good and meritorious defense to the action, but of what nature is not disclosed, either in the motion or evidence.   If he had such defense he had ample opportunity to present it, but made no attempt to do so.   He does not claim to have been taken by surprise, and he made no offer to contradict a single material fact adduced by the plaintiff in support of her case.   It is clear that nothing was presented which would have justified the Court in striking out the judgment.

Both appeals will accordingly be affirmed.

*Judgment and order appealed from affirmed,*
*appellant to pay costs.*