## BALTIMORE AND OHIO R. R. CO

*vs.*

### STATE, Use of John R. McCabe.

*Negligence: automobiles; collision with train; driver's negligence not imputable to passengers; questions for jury.*

Where an automobile was run into by a railroad train, negligence of the driver can not be imputed to a passenger, unless it is shown that the passenger contributed to the accident by his own negligence; and whether there was such negligence or not is a question of fact to be submitted to the jury.          p. 225

*Decided July 9th, 1918.*

Appeal from the Circuit Court for Frederick County. (URNER, C. J., WORTHINGTON and PETER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*F. Neal Parke* and *J. A. C. Bond,* for the appellant.

*George A. Pearre, Jr.,* (with whom were *Edwin E. Garrett* and *Richard H. Tebbs* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

This action was brought in the name of the State for the use of John R. McCabe against the appellant, the defendant corporation, for loss and damage sustained by him in the death of his infant son, John R. McCabe, Jr., caused by the alleged negligence of the defendant in the management and operation of its train.

The trial resulted in a verdict for the plaintiff, upon which a judgment was entered. It is from that judgment that this appeal has been taken.

The accident happened at a public crossing in the town of Point of Rocks in Frederick County, Maryland, through which the defendant's road, with its double tracks, passes from east to west.

The said crossing is about nineteen hundred (1900) feet west from Washington Junction where the Metropolitan Branch from Washington joins the main line of the road, and where the station for that vicinity is located.

A watchman's box, seven feet and six inches square, and about eight feet high, is located immediately east of said crossing, and seven feet north of the north rail of the west-bound track. East of this box, starting at a point one hundred and twenty-two feet therefrom, is a switch on the north side of the tracks, and north of the switch and tracks is a public road running parallel therewith and extending west-ward to and beyond the said box and road that crosses the tracks of the defendant's road at the place of the accident.

McCabe, with one Newton, both residents of Leesburg, Virginia, on the evening preceding the accident which occurred about one o'clock in the morning of September 11th, 1915, had attended a corn boiling party at Taylorsville, a town in Virginia, several miles from Point of Rocks. Each of them carried with him to the party a young lady from the last named place. The party was over about twelve o'clock and they returned to the homes of their lady companions, in Point of Rocks. McCabe left at this place the machine he had driven to the party and he, with Newton, started to return to

their homes in Virginia in the automobile driven by Newton, one that he had borrowed in Virginia for the occasion. In reaching their homes they again had to cross the tracks of the defendant, this time from north to south. The automobile, in which they were to return, was described as a very large one with a wheel base of one hundred and forty-four inches. Both McCabe and Newton were seated upon the front seat, Newton on the right, at the wheel, and McCabe upon his left. To reach the crossing they rode south on one of the streets or roads of the town to the street we have described as running north of and parallel with the switch and tracks of the defendant's road. Upon reaching that road they turned to the right and proceeded westward toward the watchman's box and road that crosses the tracks at the place of the accident. When they turned in said road, running parallel with the railroad, there were upon the switch to the left of them four or five box cars which prevented them, at such time, from seeing up the track toward the junction. These cars, Newton said, extended westward to about the beginning of the switch, which is one hundred and twenty-two feet east from the watchman's box. Newton, the only witness who saw the accident, testified that at the time they reached that point both he and McCabe looked and listened for trains that might be coming from either direction, but heard no whistles or bells. They proceeded to a point in the road where the beaten way curved somewhat to the right and away from the tracks in order to pass around the box and to better enable persons to ascend the grade of the road that passed over the tracks, the grade of the same being so much as fourteen to eighteen inches in thirty feet. At this point, which they regarded as a good position from which to ascertain whether or not a train was approaching the crossing, he stopped his machine and they both looked up and down the track, and also listened for an approaching train, but they neither saw nor heard any. Newton testified that at this time he asked McCabe, who was upon the left and was looking to the left "if he saw any lights anywhere or heard a whistle, and we talked just a second or two, and he

said he did not see anything, looked like the road was clear to him, and it looked clear to me. I couldn't see down the track all the way, I could see down just only a short way and then these box cars had me cut off from any view of that track." He then started forward toward the tracks, which were then about thirty or thirty-five feet away. In going this distance his view eastward up the tracks was obstructed by the watchman's box until he got within a few feet of the west-bound track.

It will be remembered that the distance from the box to the north rail of the west-bound track was only seven feet. After getting to a point where the watchman's box was no longer an obstruction to his view he could see eastward to the junction, if the track was clear. He explained, however, that seated upon the seat of the car its fenders and front wheels would be nearly upon the track before the view, after passing the box, would be opened to him. He said that McCabe was looking eastward for a train and as "I pulled up on the track, pulled around, straightened the car and was up on the track, when young McCabe jumped against me, and about the same time the engine struck me." McCabe was thrown from the car and his skull was fractured, from which he died.

Miss Louise Hardy of Washington, who was then visiting her grandmother at Point of Rocks and whose father was at such time a railway mail clerk upon that run, testified that her father's train was due at Point of Rocks "some time around twelve o'clock"; that after retiring she remained awake listening for the whistle of her father's train, but had not heard it at the time she heard the crash caused by the collision of the engine with the automobile in this case; that she heard no whistle nor bell preceding the crash.

A civil engineer of the defendant company, when placed upon the stand by it, testified that "At a distance of eleven feet from the north rail of the west-bound track you can see from the center of the traveled way down the west-bound track to the east, at least 122 feet from the crossing; and at

a distance of 13 feet you can see 62 feet from the center of the crossing."

At the conclusion of the evidence the plaintiff offered seven prayers; of these the 4th and 5th were granted as offered, the 7th was granted as modified by the Court, and the others were refused. The defendant offered three prayers, all of which were refused. The first asked the Court to direct a verdict for the defendant because of a want of evidence legally sufficient to entitle the plaintiff to recover. The second asked for an instruction that there was no evidence legally sufficient to entitle the plaintiff to recover under the first count of the declaration, while the third asked for a similar instruction as to the second count of the declaration.

The plaintiff's fifth prayer instructed the jury "that if they shall find from the evidence, that the defendant on or about the 11th day of September, 1915, was the owner and operator of a certain railroad running from Washington City and points west to and beyond Point of Rocks, Maryland, and run, controlled and operated thereon certain locomotives and trains of cars attached thereto. And if the jury shall find from the evidence that on or about said date a certain public road crossing and public highway crossed the said railroad tracks of the said defendant at the village of Point of Rocks; and that the said John R. McCabe, Jr., was at the time *being run guided and driven* over and along said public road and highway in a certain automobile, in the direction of and at and near said public crossing, if the jury shall find the same, and that the defendant at the same time was driving, running and directing its said cars and trains over and along said railroad in the direction of said public crossing; then it was and became the duty of the defendant, its agents and servants, in approaching said crossing with its locomotives and trains, to give proper and sufficient signals by blowing their whistles or ringing their bells so as to warn persons from their tracks; and if the jury shall find from the evidence that the said John R. McCabe was injured and killed at said public crossing, *while using due care and caution,* by reason of the failure

of the defendant its servants and agents in charge of its loco-motive and cars, to give proper and sufficient signals of their approach, then the verdict of the jury must be for the plaintiff." The plaintiff's 4th prayer defined "ordinary care" and his seventh prayer stated the measure of damages.

It is from the rulings of the Court in granting the plaintiff's said fourth, fifth and seventh prayers and in refusing the defendant's prayers that this appeal is taken.

The plaintiff's fifth prayer is in full accord with the principle enunciated in *P., W. & B. R. R. Co.* v. *Hogeland,* 66 Md. 149; *B. & O. R. R. Co.* v. *State, use of Struntz,* 79 Md. 335; *United Rys. Co.* v. *Biedler,* 98 Md. 564, and *United Rys. & Elec. Co.* v. *Crain,* 123 Md. 332, that "the contributory negligence of a carrier, or of the driver of a public or private vehicle, not owned or controlled by the passenger, and who is *himself without fault,* will not constitute a bar to the right of the passengers to recover for injuries received."

It is well settled by the above cited cases and others that the negligence of the driver in such cases cannot be imputed to the passenger injured or killed, but it is equally well settled in all such cases that the right to recover for the injury or death of such party is defeated, when it is shown that he has contributed to the accident by his own negligence, and therefore when there is any evidence tending to show such negligence legally sufficient to go to the jury it should be submitted to it. *United Rys. & Elec. Co.* v. *Crain, supra.*

The evidence in this case was legally sufficient to go to the jury, tending to show contributory negligence on the part of McCabe, but it was not of a character that warranted the Court in holding that he was guilty of contributory negligence as a matter of law.

It is shown by the evidence that McCabe did about all he could to learn of the approaching train, unless it was, to warn Newton, the driver of the automobile, not to cross the tracks of the defendant company without again stopping at a point beyond the watchman's box, where he could have seen the oncoming train. He may have thought Newton was going to

stop at such point and after reaching it there was little or no time for him to warn Newton before the train was upon them. When the box ceased to obstruct their view up the track, the front of the machine was only a few feet from the west-bound track and the first thing McCabe saw, or could have seen, when the view opened to him was the onrushing train only a few feet away. What effect this had upon him we do not know. Newton says he fell against him and about that time the engine struck the automobile. Under these circumstances it could not properly be said as a matter of law that McCabe was guilty of contributory negligence in not warning Newton against crossing the track at such time. The question of his negligence was properly submitted to the jury.

The plaintiff's fourth and seventh prayers were also properly granted and from what we have said the Court properly refused the defendant's first prayer, and we discover no reversible error in the Court's ruling upon the defendant's third and fourth prayers or upon its action upon the demurrer to the declaration.

We will therefore affirm the judgment of the Court below.

*Judgment affirmed, with cost to appellee.*