# UNIVERSAL CREDIT COMPANY *v.* LEWIS C. MERRYMAN

[No. 49, October Term, 1937.]

*Decided December 10th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, and MITCHELL, JJ.

*Frederick W. C. Webb,* with whom were *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

*Curtis W. Long,* with whom were *Lewis C. Merryman* and *Long & Robins* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This appeal is from a judgment on a verdict, entered in the Circuit Court for Wicomico County, for the plaintiff, in an action against the defendant for personal injuries sustained by him while walking across South Division Street in the City of Salisbury, in said county.

Division Street runs north and south, and is crossed at right angles by Main Street, running east and west, the latter street dividing the former into its northern and southern sections. At the southeast corner of the intersecting streets is located the Wicomico Hotel. The plaintiff, an attorney, testified that, *en route* to his office,

on the morning of April 9th, 1936, at around 9 o'clock, he crossed from the northeast to the southeast corner of the intersection of Main and Division Streets, and that he continued south on the east side of South Division Street for a distance of approximately thirty-five feet from the south sidewalk of Main Street, the width of the sidewalk being about eight feet, or, in other words, approximately forty-three feet from the south curb line of Main Street, and along the east curb line of South Division Street. At the latter point he "stopped still right at the curb, looked around to see what cars there were in the street and to see what the signal was at the intersection." When asked what he meant by the word "signal," he explained that there was a traffic signal located in the center of the intersection and about fifty-five feet distant from where he then stood; and that the stop or red light was manifested by the traffic signal at that time. He then noticed two cars parked along the east curb of South Division Street between the point where he stood and the intersection above mentioned; the cars were in stationary position outside of the main line of traffic and in front of the Wicomico Hotel. In addition to the two cars mentioned, the witness testified that there were three cars in the center lane of traffic, headed north, and that they were standing still because the traffic light was against them. Two of these cars were located a little in advance of the two parked at the curb of South Division Street, and the third was standing a short distance to the rear of the two parked cars. At this point the plaintiff was asked:

"Q. Now, just what happened to you? A. I observed this car next to me, being about approximately four feet from me. Q. What car do you mean? A. The car involved in this accident—standing there perfectly still, with this man sitting in there. The engine was not running at that time. The three cars I made mention of in the line of traffic, two of them were a little in advance of the two parked at the curb, and the third was just a little ways back, leaving an open space directly ahead of me. Then,

I got down off the curb and proceeded across. I had gotten to the point where my left leg was clear of the left side, that is, the street side of this car parked there, and I had started to bring up this right leg to make the last step, when all of a sudden it came back like that. Q. All of your body had passed the car involved in this suit except your right leg? A. That is right. Q. What happened? A. Just like that it happened—almost in an instant this car backed and struck me. When it did, the cross piece—in other words, the bumper in this car had two upright pieces, and the one on the street side, behind the driver, struck me a spot about there. In fact, there is a bruise on there now where it struck me. It threw me around to face the car and then I attempted to throw myself back so that I would not fall in the street. When I did that, I went down on this knee of the right leg, the same one that had been struck."

It is further shown by the testimony of this witness that his purpose in crossing the street was to reach his office, and that the latter was located on the west side of South Division Street, at approximately fifty feet distant from the point of intersection of the west side of said street with the south side of Main Street, and opposite the hotel; that when he started across the street there were no cars to the left, or south of him, between the point of crossing and an alley at the south end of the hotel; and that as he passed the defendant's parked car, before proceeding to cross the street, he noticed the driver sitting behind the steering wheel.

A stipulation is found in the record by which it is conceded that, at the time of the injury to the plaintiff, the car which struck him was the property of the defendant and was being operated by its servant and employee in the regular course of its business.

Judge Marion A. Humphreys was standing on the west side of South Division Street, ten or twelve feet south of Main Street, at the time of the accident, and testified that he "saw the car when it bumped into Mr. Merryman." His description of the accident is to the

effect that the defendant's car when he first saw it was parked close to the east curb of the street; that it pulled away from the curb ' and started north toward Main Street; that it moved forward four or five feet and stopped, then moved backward about the same distance, at which time the accident happened. The witness saw the plaintiff when he stepped off the curb and started across the street, and saw him knocked down as the car bumped into him on its backward movement. The gist of his testimony is that there were two cars parked ahead of, and two or three cars back of, the defendant's car, and that at the time of the accident the defendant's car was being operated for the purpose of moving from the rear of the parked car in front of him, and taking a position in the line of traffic moving northward, upon the change of the traffic signal.

John B. McRay, the operator of the defendant's car, testified that there were two parked cars in front of him and one in his rear, and that these had him "hemmed in." "Q. How far in the rear of the rear bumper of your car was the car next to you in the rear? A. I would say three and a half to four feet—four feet at most. I was quite aggravated about being hemmed in."

According to this witness, he pulled forward, turning his wheels out towards the street until he touched the rear bumper of the car in front of him. He then changed gears, looked in his mirror, saw nothing except the car to the rear, moved slowly in reverse for a distance of about a foot and a half, and felt a thump. "I slammed on my foot brakes and looked in the mirror and could not see anything. I figured it was a tin can or something. I opened the door and looked and saw Mr. Merryman," was his following statement. The witness further testified that, at the time of the accident, he had no knowledge of the presence of the plaintiff behind his car; that the motor was running and that after a glance at the mirror he looked out to his left side to guard against moving traffic on that side. There is no evidence in the record that the servant of the defendant blew his horn, and he

admits that the traffic light was red at the time he struck the plaintiff. The accident resulted in serious injury to the right knee cap of the latter.

At the conclusion of the testimony of both parties to the case, the defendant offered twelve prayers, all of which were granted, with the exception of the first and second. The first is a demurrer to the evidence; and by the second the court was asked to instruct the jury: "That, from the undisputed evidence in this case, it is apparent that the plaintiff directly contributed to the happening of the accident described in the evidence by his own want of ordinary care and prudence and the verdict of the jury must, therefore, be for the defendant." The rejection of these two prayers forms the basis of the single exception in this case, and, for the purpose of passing upon that exception, it is necessary to consider the law involved in the questions thereby raised, and to apply the same to the evidence which the record reveals.

Section 209 of article 56 of the Code, as amended by Laws 1929, ch. 224, in part provides that: "All pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers. Between street crossings in such towns and cities, vehicles shall have the right of way." In *Legum v. State,* 167 Md. 339, 347, 173 A. 565, 569, this section was construed by Judge Offutt as follows: "It is implicit in that statute that, while a pedestrian may lawfully travel on or across a city street 'between street crossings,' his right to so use the street is subordinate to that of vehicular traffic in the lawful use thereof, and that, while vehicular traffic may lawfully traverse street crossings, its right so to do is subordinate to that of pedestrians in the lawful use of such crossings, and that the relative rights of the operators of motor vehicles and pedestrians, in respect to any question of negligence arising from their use of the highway, must be tested by those rules." An important element, therefore, in considering a case in which there is a collision between a motor vehicle and a pedes-

trian, is whether the collision occurred within the limits of a pedestrian crossing, or whether it occurred between crossings; for, while both pedestrians and operators of motor vehicles are entitled to the lawful use of the street or highway, the degree of diligence and care on the part of both is shifted from the one to the other, according to the location of the scene of the collision. It seems unnecessary to observe that the more usual course of traffic movement is forward, not backward; and it is doubtless due to this circumstance that cases involving injury or damage to persons or property through the backward movement of vehicles are far less numerous than those in which accidents occur by reason of an onward or forward trend. The law, however, draws no distinction between the respective rights of motorists and pedestrians, and the respective degrees of care incumbent upon both, by reason of the direction in which traffic is moving. As stated, both have a right to the lawful use of the street, and both are charged with that degree of care which the law places upon them regardless of their movements.

As to the ruling upon the demurrer prayer embodied in the exception, we have no difficulty in reaching the conclusion that the evidence hereinbefore detailed was legally sufficient to warrant the submission of the case to the jury. It is well settled by many cases found in the reports of this court, as well as in other jurisdictions, that the criterion for the determination of this question is whether the evidence is of sufficient probative force to enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the proposition sought to be manifested by it. *Baltimore Elevator Co. v. Neal,* 65 Md. 438, 5 A. 338. In 2 *Poe's Pl. & Pr.,* sec. 295 A, it is said: "A prayer seeking to take the case away from the jury on the alleged ground of total failure of evidence to support the plaintiff's case, will not be granted if there is any evidence, however slight, legally sufficient as tending to prove it, that is to say, competent, pertinent and coming from a legal source, but the weight and value of

such evidence will be left to the jury." And it is universally conceded that a case should not be taken from the jury upon a prayer that there is no sufficient evidence to justify the finding for the adverse party, if there be any evidence from which a rational conclusion may be drawn as opposed to the theory of such a prayer. Before such prayer can be granted, the court must assume the truth of all the evidence before the jury tending to sustain the claim or defense, as the case may be, and of all inferences of fact fairly deducible from it; and this, though such evidence be contradicted in every particular by the opposing evidence in the case. *McElderry v. Flannagan's Admr's.*, 1 H. & G. 308; *Leopard v. Chesapeake & Ohio Canal Co.*, 1 Gill 222; *Jones v. Jones*, 45 Md. 144, 154; *Mallette v. British Assur. Co.*, 91 Md. 471, 46 A. 1005; *Moyer v. Justis*, 112 Md. 220, 76 A. 496; *Taxicab Co. of Baltimore v. Emanuel*, 125 Md. 246, 93 A. 807, 813.

Measured by these standards, the facts in the instant case disclose that the plaintiff stopped, looked, and listened before attempting to cross the street. He stood at the curb and looked both to his left and right; he observed the defendant's car parked at the curb with the defendant's employee sitting at the wheel, and also observed a second car, likewise parked, in front of the defendant's car, as well as three other stationary cars in the line of northbound traffic, towards the center of the street, and that a traffic light at the street intersection registered red. The engine in the defendant's car was then silent. In this situation he stepped from the curb at a distance of at least four feet to the rear of the defendant's parked car, and was in the course of his journey across the street when the accident happened by the sudden backing of the car; and there is no evidence that he was warned of such movement of the car by any horn or signal on the part of the defendant's employee. It follows, therefore, that the case was properly submitted to the jury.

Turning now to the defendant's second prayer, it

should be borne in mind that, in considering such a prayer, we must inquire whether the facts justify the court in holding, as a matter of law, that a recovery cannot be had because the plaintiff was guilty of contributory negligence. The truth of the evidence adduced by the plaintiff must be assumed in dealing with this question, and all legitimate inference deducible from that evidence must be conceded. In this connection, as stated in *Merrifield v. Hoffberger Co.*, 147 Md. 134, 127 A. 500, 501: "It may be well to state that the law, as declared by this court and supported by the great weight of authority elsewhere, is that, to justify the trial court in withdrawing the case from the consideration of the jury on the ground of contributory negligence by the plaintiff, the evidence must show some prominent and decisive negligent act on the part of the plaintiff which directly contributed to the accident, and was the proximate cause thereof, and that this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds." *Balto. & O. R. R. Co. v. Hendricks*, 104 Md. 76, 84, 64 A. 304; *Cooke v. Traction Co.*, 80 Md. 551, 558, 31 A. 327; *Taxicab Co. of Baltimore v. Emanuel, supra.* In the last cited case it is said: "The act relied on to establish, as a matter of law, the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act relied on to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law." *Jones v. Wayman*, 169 Md. 670, 182 A. 417. In *Weidner v. Otter*, 171 Ky. 167, 188 S. W. 335, 338, the court said: "It is too a familiar rule of the law of negligence that the care to be exercised must correspond with the capacity to injure, and accordingly the automobilist is under a

much higher degree of care to look out for the pedestrian than the pedestrian is to look out for the automobilist. The pedestrian cannot merely by the manner in which he uses the street harm the automobilist, but the automobilist may by his manner of using the street kill the pedestrian; and so, generally speaking, the pedestrian is only required to look after his own safety, and not the safety of others, while the automobilist must look out for the safety of the pedestrian rather than his own." Notwithstanding this statement of the law, however, it is the imperative duty of the pedestrian to exercise ordinary or reasonable care and not act in manner contrary to that of an ordinarily prudent and careful person under similar circumstances.

Having detailed the conditions under which the plaintiff undertook to cross the street in the instant case, it becomes unnecessary to restate the circumstances here. A careful analysis, however, of the evidence as to the situation which confronted the plaintiff would seem to justify the inference that his action immediately prior to and at the time of the accident, with due reference to the surrounding circumstances, was that of an ordinarily prudent person. The picture which at that time was presented to him was that of suspended traffic, as evidenced by the red light of the stop sign. It is true he saw the defendant's car, with the defendant's servant at the wheel; but that car was headed in the same direction as were all other cars to his right. He had looked in the direction of the defendant's car, and the engine was silent; and inasmuch as the car in which the defendant's servant was sitting at the time was "hemmed in," as shown by the driver's own testimony, it was but a fair inference that it would not move until a change of the traffic light cleared the way for the movement of the cars which the driver admits were parked to his left in the line of traffic, and not to anticipate that the defendant's car would be suddenly backed in the brief interval which it would have taken him to pass the width of the car.

The case before us is somewhat analogous to that of *Payne v. Wright*, 58 Cal. App. 655, 209 P. 218, in which the plaintiff, while standing between two parked automobiles and awaiting a signal from her grandson to advance across the street, was struck by the defendant's automobile as he backed it into the space between the other two cars. A judgment for the plaintiff was sustained, it being held that there was ample testimony from which the jury might have concluded that the defendant gave no warning signal before backing into the space where the plaintiff was standing, that he backed into such space rapidly, and that the plaintiff looked to her right and left before leaving the sidewalk and looked at the defendant's machine, and that it was at a standstill, and that, a moment after she had stepped into the street, the defendant, without any warning signal and without looking in the direction of the plaintiff, backed his car so rapidly into the space in which she was standing that she had no opportunity to escape. Although the facts in that case differ from those in the instant case, in that it appears that the operator of the car failed to look backward, whereas here the testimony of the defendant's servant is that he did so, the inference is that, had he looked, as stated, he would have seen the plaintiff before he knocked him down. Under this state of facts, it is our view that the lower court was right in refusing the prayer which asked it to hold as a matter of law that recovery could not be had because the plaintiff was guilty of contributory negligence; and, finding no error in its ruling, the judgment will be affirmed.

*Judgment affirmed, with costs.*