JOHN W. PITCHER ET AL. *v.* JOHN N. DAUGHERTY
[No. 16, October Term, 1939.]

*Decided November 1st, 1939.*

146

The cause was argued before BOND, C. J., OFFUTT, PARKE, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Lewis W. Lake,* for the appellant.

*G. C. A. Anderson,* with whom was *Charles T. Le Viness* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

John N. Daugherty, the appellee, sued John W. Pitcher, and his wife, for damages growing out of a collision between plaintiff's motorcycle and defendants' automobile, on the public road leading from Easton to Dover Bridge (which spans the Choptank River), and passes the police sub-station which is located about four miles from Easton.

The principal question presented by the record arises out of a ruling of the lower court on a prayer to withdraw the case from the consideration of the jury, and to direct a verdict for the defendants. The lower court refused to grant this instruction, and, from a judgment in favor of the plaintiff, the defendant appealed.

There was evidence in the case tending to prove these facts. Daugherty, an officer of the Maryland State Police, was proceeding on his motorcycle from Easton towards the police sub-station. The defendants were proceeding over the same road from Dover Bridge towards Easton. They were both approaching a curve on that road and driving in opposite directions, but the defendants' car had passed the curve when the collision occurred. As Daugherty approached the curve he was driving at about forty miles per hour on his right side

of the road, and between three and four feet from its extreme edge, on the south side. As he approached the curve he decreased his speed and applied his brakes. He then observed a car coming towards him on his side of the road, and, when the car drew closer, noted that the operator's head was turned in a northerly direction, looking towards an airport. He had previously to that applied his brakes and sounded his horn, but defendants' auto continued to come towards him on his side of the road at such an angle that he saw that, unless one or the other changed his course, there would be a head-on collision, so he immediately swerved his motorcycle to the left to avoid the danger, but, as he swerved to the left, the appellants' car, apparently, did the same thing, and they collided. The front of his motorcycle hit the left front fender of the defendants' car. Going east before the curve begins, the road is macadam, but where it approaches the curve there is a concrete apron. The macadam section of the road is about sixteen feet before you get to the concrete apron. The appellee had just got on the concrete apron when he observed defendants' car, which was then rounding the curve. His motorcycle was about three or four feet from the south edge of the road. He then immediately applied his brakes and sounded his horn. The car continued on appellee's side of the road around the curve, cutting in to the left all the time. The point of the impact was about twelve to fifteen feet from the south edge of the road, but still on appellee's side of the road.

On cross-examination the appellee further testified that: "Q. Didn't you say that the point of impact was twelve to fifteen feet from the south side of the road? A. Yes. Q. You guided your machine from this point (indicating) three to four feet from the south side of the road, to the point of impact, twelve to fifteen feet away from the south side of the road, did you not? A. No, sir. That is not the way it happened. Q. Well, then, how did your machine get twelve to fifteen feet away from the south side of the road, if you didn't steer it

there yourself? A. As I stated, I was coming into there —I saw the Reverend's car come around the curve. Q. Yes? A. I immediately applied my brakes and sounded my horn and continued on a straight course. When I saw that my avenue of escape would be cut off, and the Reverend looked as if his car were going to continue on across to the left-hand side, and more than likely crash, then I swerved my motorcycle to the left immediately, and that is when the accident occurred."

The road at that point turns at approximately a right angle, and the southwest corner of the intersection is materially cut back and a concrete shoulder or extension is laid down, twenty-one feet in width at the turn and extending for a considerable distance each way from the curve, and diminishing in width until it comes to points at each end of the concrete construction. The road on the north side seems to have been materially widened, so that at its greatest width at the turn it is seventy-eight feet. Upon cross-examination one witness, Peroutka, without objection, made this statement: "Do you think that is a dangerous curve? A. No, sir, not since it has been widened and that concrete shoulder had. Q. Do you not regard forty miles per hour, running into a curve at forty miles per hour as an excessive speed when you cannot see around the curve? A. Not on that curve, I could go around that curve on my motorcycle at forty miles per hour and think nothing of it."

At the place of the accident the road, including the width of the concrete shoulder, was approximately thirty-four feet, therefore there was more than ample room for these vehicles to pass in safety, provided they remained on their respective sides of the road. The appellants contend that a speed of forty miles per hour on the turn is negligence in law, but the testimony is inconsistent with an inference that that rate of speed was being maintained on the curve or at the place of the accident, for the uncontradicted evidence is that the appellee applied his brakes fifty-two feet from the point

of the impact. The plat and the testimony show that the appellants had just rounded the curve and were entering on the straight way of the road at the time of the collision. As soon as the plaintiff observed their car coming in his direction, and realized the danger of the situation, he blew his horn, applied his brakes, and endeavored to avoid the collision, and when the defendants continued their course across and down the left side of the road, and appellee saw that Mr. Pitcher, who was driving, had his head turned and was looking towards the airport, the plaintiff realized the peril of his position and undertook to avoid it by turning sharply to his left, but his effort was nullified by defendants' movement in the same direction. The measurements and skid marks with respect to the defendants' car show that it was proceeding on the left or wrong side of the road, and when the car was brought to a standstill it was still partly standing on the macadam and partly on the concrete. Daugherty states that the collision occurred on the concrete shoulder, and there are three witnesses, who were driving in a car immediately following the motorcycle, who testified that the collision occurred on the appellee's right-hand side of the center of the road.

Before appellee can be said to be negligent in law, he must have been guilty of some distinct, prominent, and decisive act of negligence causing the injury, concerning which there can be no room for a reasonable difference of opinion, and the court, in considering the question, must assume the truth of the plaintiff's testimony, including all reasonable inferences that may be drawn therefrom, tending to support the plaintiff's right to recover. *Lozzi v. Pennsylvania R. Co.*, 152 Md. 508, 137 A. 293; *Freidman v. Hendler Creamery Co.*, 158 Md. 131, 148 A. 426; *Baltimore Transit Co. v. Lewis*, 174 Md. 618, 199 A. 879.

In this case the evidence permits an inference that the proximate cause of the injury was the inattention of the driver of defendants' car, and the fact that their

150

car was on the wrong side of the road and in such a position that the plaintiff could not pass it on his right. Under these circumstances the effort of the plaintiff in swinging to the left in order to avoid the collision is not conclusive evidence of negligence. *Burhans v. Burhans,* 159 Md. 370, 150 A. 795; *Kaline v. Davidson,* 146 Md. 220, 126 A. 68; 2 *Blashfield, Cyclopedia of Automobile Law* (Perm. Ed.), sec. 920, p. 64; *Warner v. Markoe,* 171 Md. 351, 358, 189 A. 260.

The failure of the plaintiff to anticipate the position of defendants' car on the wrong side of the road certainly was not under the circumstances negligence *per se.* Code (Supp. 1929), art. 56, sec. 209; *Taxicab Co. v. Ottenritter,* 151 Md. 525, 135 A. 587; *Coplan v. Warner,* 158 Md. 463, 149 A. 1; *Fisher v. Finan,* 163 Md. 418, 163 A. 828; *Bielski v. Rising,* 163 Md. 492, 163 A. 207.

For these reasons we find no error in the refusal of the defendants' demurrer prayer.

The third prayer of the defendants, which was refused, was in substance a repetition of their second and fourth prayers, which were granted. There was no error in refusing to grant that prayer, when the instruction sought in the prayer was substantially covered by granted prayers. *Moore v. McDonald,* 68 Md. 321, 12 A. 117; *Airey v. Airey,* 160 Md. 41, 152 A. 430.

In our opinion the jury was properly and fairly instructed by the granted prayers with respect to the alleged contributory negligence of the plaintiff, and there was therefore no error in the action of the court in refusing the defendants' third prayer.

Finding no error in the rulings of the court, the judgment must be affirmed.

*Judgment affirmed, with costs.*