## DAVIDSON TRANSFER & STORAGE COMPANY *v.* STATE, USE OF BROWN

[No. 40, October Term, 1941.]

*Decided November 14, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Roszel C. Thomsen* with whom were *Clark, Thomsen & Smith,* on the brief, for the appellant.

*G. C. A. Anderson* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

Appellant, defendant below, appeals from a judgment entered by the Superior Court of Baltimore City upon the

verdict of a jury in favor of the equitable plaintiff, Clyde Marion Brown, who with his father, James R. Brown, and sister, Geraldine E. Brown, brought suit in the name of the State of Maryland under the provisions of Code, Article 67, known as "Lord Campbell's Act," to recover damages sustained by them by reason of appellee's alleged negligence causing the death of Inez Elizabeth Brown, wife of James R. Brown, and mother of the other equitable plaintiffs. The verdict returned by the jury was for $2,500, all of which was apportioned to the equitable plaintiff, Clyde Marion Brown, son of the decedent, and this sum was subsequently reduced to $2,000 by the filing of a remittitur in the sum of $500 in order to prevent a new trial.

The questions presented by the appeal all relate to the correctness of the trial court's rulings upon the prayers. Specifically appellant contends that the court erred in refusing its A, D, and eighth prayers. The A prayer sought a directed verdict, because of an absence of legally sufficient evidence entitling the equitable plaintiffs to recover, and the D prayer asserted that there was no legally sufficient evidence to prove that Clyde M. Brown, the equitable plaintiff, was entitled to more than the nominal damages, while the eighth prayer sought an instruction that unless the jurors found from the evidence that there was a reasonable probability that Clyde M. Brown would have received substantial services or contributions from Inez H. Brown during his minority, they could not allow him anything beyond nominal damages.

Before discussing the rejected prayers just referred to, some statement seems necessary in regard to the evidence. Inez Elizabeth Brown, slightly above 35 years of age died at the Union Memorial Hospital in Baltimore, Maryland, shortly after being taken there from the scene of an accident in which she was injured on the "Old Philadelphia Road," approximately one mile east of Perryville in the early morning of April 9, 1940. Her injuries resulted from a collision between a V-8 Ford Automobile in which she was a passenger and with a

Mr. Schum occupied the rear seat, the forward seat at the time of the accident being occupied by John E. Thompson, driver, and Geraldine E. Brown, daughter of the victim and now the wife of Thompson. The car in which she and the others were riding was proceeding easterly, and the road at that point was straight and built of macadam, 18 feet in width, with dirt shoulders 4 or 5 feet wide. It was raining, and the weather was misty and foggy. At that point the road contains a series of knolls or hills. The accident occurred almost immediately after the Ford car driven by Thompson reached the summit of one af such knolls, and it is contended by the equitable plaintiff that it was caused by the sudden appearance in front of him of another motor vehicle coming in the opposite direction upon Thompson's side of the road, upon observing which, he applied his brakes suddenly in such manner that his car skidded to his left and turned half way around so that the rear of the Thompson vehicle faced a tractor truck and trailer moving westerly. An impact immediately followed which crushed the rear of the automobile, fatally injuring Mrs. Brown.

At the time of the accident, Mrs. Brown, who had for four months previously been living at Granite Lodge near Port Deposit, was returning to the home of relatives in Salisbury, Maryland. After leaving Granite Lodge a stop was made at Port Deposit where other passengers were taken on and then the car was driven to Perryville for others, later to Jopp's Garage in Aberdeen. The party then being complete, they next drove to Baltimore, and after stopping at the Bismark Brewery for beer, they made two other stops, calling on friends of Mrs. Groves and Mr. Brown, and next proceeded toward Perryville for Salisbury. The knoll or hill in the road at the scene of the accident is shown to have been steep enough to prevent the occupants of the Ford from seeing on-coming traffic and likewise prevented persons coming from the opposite direction from seeing the Ford. As they reached its summit, the driver testified that he observed lights coming out of a line of traffic from his left

side of the road heading toward him and "coming directly in my half of the road"; that it was approaching well up the grade toward him. He put on his brakes and the Ford swerved to the other side of the road and the rear of his car collided with the front of appellant's truck, which when he first observed it was thirty feet from him. The witness could not say that the second truck, the lights of which he saw on his side of the road, had clearance lights. He further stated, "I would not say the man completely pulled out, because the headlights came out on an angle, and I could see the two lights just like that" (indicating). Thompson testified he was driving from thirty-eight to forty miles per hour immediately before the accident, but had after reaching the top of the hill reduced his speed to not more than thirty-five miles per hour. It is shown that a line of westbound traffic was ascending the hill. There were three motor trucks well up the hill. The first and third of these were tractor-trailer vehicles owned by appellant, while a truck of unknown identity was between them. Plaintiff contends that the predicament of the Ford driver was caused by the negligence of Dandy, driver of the defendant's second truck, the third in the rear of approaching traffic, because it pulled out of line and threw its lights across Thompson's side of the road in such a manner that he, for the safety of himself and his passengers, was forced to do something to avert a collision. There was testimony that it was defendant's truck that pulled out of line going up the hill about half way up the grade and no testimony that any other truck had left the line. The three trucks above mentioned were followed at some distance by two other trucks, one belonging to Horton Motor Lines and proceeding from New York to Baltimore. The driver of that vehicle testified that about a square in the rear of appellant's second truck, third in line of traffic, he decreased his speed in order not to get too near it before reaching the top of the hill; that he saw the truck pull out of line over the white line and back of it went about half way over the center of the road to the left and then it started back again, and

just as it did, he saw the motion of lights ahead. He did not know until the truck pulled out that other trucks were ahead of it, and did not see the lights of the car approaching from the opposite direction until the truck had started to come back in the line. He further testified that the truck which had been driven out from the line partly to the center of the road was owned by appellant, and it had clearance lights.

Another witness, Mr. Criddle, driver of a Cowan truck and proceeding in the same direction, was attracted to the scene of the accident by red flares. Upon arrival he walked forward to the line of trucks and found trucks ahead of him from the point of the accident as follows: A. Davidson truck, an unknown truck, a Davidson truck, Horton truck and a Cross truck and lastly his own truck.

It was further shown by Wolf, driver of the forward truck of appellant, that the two trucks owned by appellant were on a "flyer round trip" from Philadelphia to Baltimore, and he and the driver of the other truck proceeded together from Philadelphia to the point of the impact. He testified that they passed the Cross truck a mile from the scene of the accident, after which the witness passed another truck about a quarter of a mile from the point of the accident; that as he approached the hill on which the accident occurred, he drove thirty-five or more miles per hour, but could not see lights of the oncoming Ford on the other side of the hill, and the road was so narrow that each driver must keep well on his side. He stated he first noticed the reflection of other lights when about half way up the hill which lights were in the lane for approaching traffic; that the Ford swerved over, started to skid and turned around in front of him, the left side of it striking the left of his tractor, which then was almost stopped. He also testified that Thompson then said he put on his brakes, felt himself skidding, got nervous and jumped on them, with the result that his wheel locked and that his "car spun him around." He further stated that to his tractor was attached a twenty-six foot trailer with an 18,000 pound load, and it took

four hours to drive from Philadelphia to Baltimore, and the point of impact was forty-two miles from Baltimore.

Dandy, driver of appellant's second tractor-trailer, the third truck in line, testified that both he and Wolf passed the Cross truck; that Wolf passed another truck as they started down Church Hill, one half of a mile from the scene of the accident, but Dandy did not pass that truck. He stated that as the trucks approached the point of accident an unknown truck was between the truck driven by witness and that of Wolf, and the Cross truck was behind it some distance; that he saw headlights coming over the hill which swung to the north in front of the forward truck. The witness then had started upgrade on the right-hand side of the road eighteen feet from the center, proceeding at thirty to thirty-five miles per hour; that the two Davidson trucks and the unknown truck were spaced about 100 feet apart; that the vehicle which he was driving was thirty-two feet long. He further stated that at the time of the impact, he was on his side of the road, and he did not veer to the left of the center line; that after the accident occurred he got out of his truck with some flares, and that the clearance lights on the truck which he drove were lighted at the time; further that they left Philadelphia about 10:55 or 11 o'clock, and the accident happened about 2 o'clock A. M. or later on the return trip, and the two Davidson trucks drove one behind the other most of the way, he himself having driven behind the unknown truck for only about one-half a mile.

In view of the evidence, did the trial court err in refusing to grant defendant's A prayer? It is to be borne in mind that the truth of the plaintiff's evidence and inferences logically deducible therefrom must be assumed in answering this question, for if defendant's testimony flatly contradicts that of the plaintiff, still if the plaintiff's evidence is in itself sufficient to justify submitting the case to the jury, it cannot be withdrawn, for in that event conflicts are properly determinable by the jury. *Taxicab Co. v. Emanuel*, 125 Md. 246, 93 A. 807; *Sun*

*Cab Co. v. Reustle,* 172 Md. 494, 192 A. 292; *Universal Credit Co. v. Merryman,* 173 Md. 256, 195 A. 689; *Geschwendt v. Yoe,* 174 Md. 374, 198 A. 720; *Kelly v. Huber Baking Co.,* 145 Md. 321, 125 A. 782; *Chesapeake & P. Telephone Co. v. Merriken,* 147 Md. 572, 128 A. 277, 4 *A. L. R.* 763; *Lashley v. Dawson,* 162 Md. 549, 160 A. 738; *Lusk v. Lambert,* 163 Md. 335, 163 A. 188; *Armiger v. Baltimore Transit Co.,* 173 Md. 416, 196 A. 111.

It is conceded that no issue of contributory negligence is raised, and that if Thompson was negligent in handling the Ford automobile such negligence could not be imputed to the deceased, a passenger riding on the rear seat thereof. *United Rys. & Electric Co. v. Crain,* 123 Md. 332, 91 A. 405; *Baltimore & O. R. Co. v. State,* 133 Md. 219, 104 A. 465; *Washington B. & A. R. Co. v. State,* 136 Md. 103, 111 A. 164; *Gavin v. Tinkler,* 170 Md. 461, 184 A. 903.

But appellant argues that the evidence is insufficient to show any negligence on the part of the driver of the third truck which contributed to the accident, the proximate cause of which, as it contends, being due to the fast driving of Thompson under existing and unsafe road conditions at that time. In view of Thompson's testimony and the testimony of Robinson, driver of the Horton truck, this Court is of the opinion that the jurors could, if they believed their versions, have found that Thompson's conduct immediately before the accident was caused at least in part by the negligent conduct of Dandy, driver of the third tractor-trailer, because Thompson testified that a motor vehicle proceeded from the right to the left side of the road coming toward him, making it imperative that he take some action to avoid being struck. In such a situation he did not describe the vehicle other than it came from his left and threw the lights in path of the Ford, but the witness Robinson testified that one vehicle and only one drove to its left out of the line of traffic and that was Davidson tractor-trailer No. 2. According to him that vehicle got practically across the center line of the road. It is true he said "it ducked right back," but

even so, its presence in the front of Thompson for even a moment was a warning to him to act promptly to avert an accident. The evidence being that a vehicle did drive out in front of him and an eyewitness having testified that only the Davidson tractor-trailer thus drove out, that evidence was sufficient to submit to the jury, who could have determined that the conduct of the driver of the truck so confused Thompson as to place him in a perilous situation, in which his conduct might have been regarded by them as non-negligent, because of the emergency in which Thompson found himself. *Burhans v. Burhans,* 159 Md. 370, 150 A. 795; *Kaline v. Davidson,* 146 Md. 220, 126 A. 68; *Pitcher v. Daugherty,* 177 Md. 145, 8 A. 2d 917.

But even if they found Thompson was negligent, yet if they had also found that his negligence was concurred in or contributed to by Dandy, driver of the truck, which concurrence caused Mrs. Brown's injury, the case was still properly submitted to the jury, because under the circumstances it would not have been in law a bar to recovery by the equitable plaintiff.

An additional reason is suggested as to why the case should have been submitted. Code, Article 56, Sec. 235, provides that "* * * no vehicle shall pass another from the rear at the top * * * of a hill or on a curve where the view ahead is in anywise obstructed * * *." According to the plaintiff's evidence, the defendant's truck was on a hill attempting to pass another vehicle nearer the top of the hill, although the driver could not see beyond or over the top, and this on a wet, foggy and rainy night upon a narrow road with a wet and slippery surface, driving a thirty-two foot tractor and trailer with an 18,000 pound load, with still another truck in front of him, the size and length of which he could not have known. To have thus driven under the circumstances and conditions described to the left side of the road while ascending a hill without regard to the presence of vehicles on the other side of the hill coming in the opposite direction could have been characterized by the jury as a violation of the quoted

section which was the proximate cause of the accident. *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, at pages 35 and 36, 187 A. 865; *Greenbaum v. Costa,* 137 Md. 524, at page 528, 113 A. 79; *Standard Oil Co. v. Sterm,* 167 Md. 211, at pages 212-216, 173 A. 205; *Lusk v. Lambert, supra; Wolfe v. State,* 173 Md. 103, 194 A. 832; *Miles v. State,* 174 Md. 292, at pages 300, 301, 198 A. 724; *Consolidated Gas, Electric Light & Power Co. v. O'Neill,* 175 Md. 47, 200 A. 359.

There is some contention that because Thompson stated he did not see clearance lights on the truck and the testimony of Dandy showed that his truck had such lights, this is evidence that the unknown truck and not appellant's may have confused him, although there is not the slightest direct testimony on the part of any witness to the effect that any except appellant's truck ventured out of the line of traffic to the left. And much is said in argument regarding the testimony of some witnesses that when the truck ventured out it was 300 feet from Thompson who himself testified he thought it was half way up the hill. As to the first it is sufficient to say that we regard the case properly submissible to the jury on the identity of the truck which confused the driver. Its distance from the automobile was nothing but estimates of the various witnesses and this question was also so far as relevant to be determined by the jury.

Upon these considerations, we conclude that the trial court properly refused a directed verdict.

This leaves for consideration defendant's rejected prayers D and 8, by the former of which it sought an instruction limiting the equitable plaintiff, Clyde M. Brown, to nominal damages in the event of recovery, and the latter of which sought to have the jurors instructed that they could allow him nothing beyond nominal damages, unless they found from the evidence a reasonable probability that he would have received substantial services and contributions from his mother during his minority.

The evidence shows that Clyde M. Brown had previous-

ly lived in Salisbury, Maryland. Since 1938 his mother was estranged from her husband and had also lived there caring for his grandmother, but in December, 1939, she went to Granite Lodge, owned by a Mrs. Groves at Port Deposit, stating to her, "I don't have any place to go, do you care if I stay?" From that time on she remained there approximately four months until the time of the accident which produced her death. She had also at a previous time been living in Wilmington. While at Granite Lodge, the evidence does not show that she had furnished her infant son any support or maintenance. The husband testified that she and Clyde went to Salisbury at the same time where Clyde was being sent to school under his mother's care.

Appellant argues that the true basis of damages is measured by the pecuniary loss sustained in the death of the parent, because there is no other standard of compensation. 2 *Sedgwick on Damages,* Secs. 574 and 578, is quoted in support of that argument. He further cites *Baltimore & O. R. Co. v. State, to Use of Kelly,* 24 Md. 271; *Baltimore & O. R. Co. v. State,* 60 Md. 449, and *State v. Cohen,* 166 Md. 682, 172 A. 274, 94 *A. L. R.* 427. We think that properly interpreted, those authorities cannot be regarded as holding that in order to justify recovery there must be a direct showing that the origin of the loss is confined solely to pecuniary considerations, because it would scarcly be argued that upon the death of a parent a surviving infant child has not suffered a loss which in many instances includes intangibles for which there can be no compensation, and for which the law makes no attempt to compensate, but must define the loss for which compensation is given. This may appear in the loss of the benefits or advantages which the plaintiff might have expected to receive from the parent had not the life of the latter been suddenly ended. Such loses are therefore, because no other remedy for compensation exists, translated into pecuniary damages. *Baltimore & O. R. Co. v. State, to Use of Kelly, supra; Baltimore & O. R. Co. v. State, to Use of Fryer,* 30 Md. 47; *Baltimore & O. R. Co.*

74

*v. State, to Use of Mahone,* 63 Md. 135; *Agricultural & Mech. Ass'n. v. State,* 71 Md. 86, 18 A. 37, 17 *Am. St. Rep.* 507; *Baltimore & O. R. Co. v. State,* 81 Md. 371, 32 A. 201; *Consolidated Gas, Electric Light & Power Co. v. Smith,* 109 Md. 186, 72 A. 651; *State v. Cohen, supra; Employers' Liability Assurance Corp. v. Baltimore & O. R. Co.,* 173 Md. 238, 195 A. 541.

It seems clear from the authorities above cited that the equitable plaintiff is entitled to recover for the loss he has sustained. In *Baltimore & O. R. Co. v. State,* 81 Md. 371, 32 A. 201, 204, damages were recovered by a wife and child for losses occasioned by the death of the husband and father. The lower court rejected an instruction sought by the defendant limiting recovery to nominal damages. The evidence showed that the husband had abandoned his family and had been separated from them for twelve years, within which time he had contributed nothing to their support. This Court, on appeal, held that the proposition contended for was not sustained by reason or authority and affirmed the judgment appealed from. In the course of that opinion it was said, "It is very clear from the testimony in the record that the wife had not by her own wrong forfeited her right to a decent support from her husband in accordance with her station in life. The marital relation created this right, and it continued to exist in law to the death of the husband, and this, too, without reference to the will or wishes of the husband." That ruling seems in accord with the present weight of authority on the subject which is to the effect that the duty on the parent to support his infant offspring still existed, and even though he was not contributing to the child's support, since this duty rested upon him, the infant in the event of his being negligently killed could recover against the wrongdoer such amount as the jury found proper. *L. R. A.* 1916 C, 807; 18 A. *L. R.* 1409; 90 *A. L. R.* 920.

The conclusions herein indicated are not, under the circumstances shown, effected by the fact that the father of the equitable plaintiff is still living. Code, Art. 72 A,

Sec. 1; *Yost v. Yost,* 172 Md. 128, 190 A. 753; *Schneider v. Schneider,* 160 Md. 18, 152 A. 498, 72 *A. L. R.* 449; *Malone v. Topfer,* 125 Md. 157, 93 A. 397, *Ann. Cas.* 1916 E, 1272.

Entertaining these views, we hold that Prayers D and No. 8 were properly refused, and the judgment appealed from should be affirmed.

*Judgment affirmed, with costs.*